## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
Case No. 9:21-cv-82056-CIV-CANNON

CELIA R. CLARK,

        Plaintiff,

   v.

UNITED STATES OF AMERICA; THE
INTERNAL REVENUE SERVICE,

        Defendants.

## UNITED STATES' ANSWER AND COUNTERCLAIM

Defendant "United States of America; the Internal Revenue Service" responds to Plaintiff Celia R. Clark's complaint as follows:

### FIRST DEFENSE

The Internal Revenue Service is an agency of the United States, and as such, is not authorized to sue or be sued *eo nomine* absent explicit authorization. *Blackmar v. Guerre*, 342 U.S. 512, 514–15 (1952). Accordingly, "a suit purporting to bring claims against the IRS is deemed to be a suit against the United States." *Abell v. Sothen*, 214 Fed. Appx. 743, 750–51 (10th Cir. 2007).

### SECOND DEFENSE

The statute of limitations to bring the claims asserted in Count II expired.

### THIRD DEFENSE

Any disclosures of Clark's tax return information during the examination of her liability for penalties under 26 U.S.C. § 6700 were authorized by 26 U.S.C. § 6103.

## FOURTH DEFENSE

To the extent any disclosure of Clark's tax return information during the examination of her liability for penalties under 26 U.S.C. § 6700 were not authorized, such disclosures resulted from a good faith, but erroneous, interpretation of 26 U.S.C. § 6103.

## FIFTH DEFENSE

For its further answer, the United States responds to the numbered allegations of the complaint as follows:

1.      The United States admits that for many years prior to 2000, the Internal Revenue Bulletin contained a Statement of Principles section, which included the quoted language. The United States further admits that such language has not been published in the Bulletin since 1999. The United States denies all other allegations in paragraph 1.

2.      The United States admits the allegations in the first sentence of paragraph 2. The United States further admits that 26 U.S.C. § 831(b) provides that, under certain conditions, small insurance companies may elect to exclude from their taxable income the insurance premiums they earn. The United States lacks knowledge or information sufficient to form a belief as to the truth of all other allegations in paragraph 2.

3.      The United States denies the allegations in paragraph 3.

4.      The United States denies the allegations in the first sentence of paragraph 4. The United States admits the allegations in the second sentence of paragraph 4. The United States lacks knowledge or information sufficient to form a belief as to the truth of all other allegations in paragraph 4.

5.      The United States admits that the IRS investigated Clark to determine whether penalties under 26 U.S.C. § 6700 should be assessed against her, and that investigation resulted

in the assessment of such penalties for tax years 2008 through 2016. The United States lacks knowledge or information sufficient to form a belief as whether Clark believed that the IRS might have discontinued its investigation with no penalty assessed. The United States denies all other allegations in paragraph 5.

6.     The United States admits that *Avrahami v. United States,* 149 T.C. 144 (2017) was the first case to consider the specific issue of the tax treatment of premiums paid to a microcaptive insurance company under 26 U.S.C. §§ 162 and 831(b). The United States denies all other allegations in the second sentence of paragraph 6. The United States lacks knowledge or information sufficient to form a belief as to the allegations in the first sentence of paragraph 6.

7.     The United States admits that Clark seeks a refund in this action. The United States denies all other allegations in paragraph 7.

8.     The United States admits that the Court has jurisdiction over Clark's claim in Count I for a refund of 26 U.S.C. § 6700 penalties assessed against her pursuant to 28 U.S.C. §§ 1331, 1340, and 1346(a)(1) and 26 U.S.C. § 7422. The United States denies that the Court has jurisdiction over Clark's claim for damages in Count II.

9.     The United States admits the allegations in paragraph 9.

10.     The United States admits the allegations in paragraph 10.

11.     The United States admits the United States of America and the Internal Revenue Service are named defendants in this action. The United States denies that the Internal Revenue Service is a properly named defendant.

12.     The United States admits the allegations in the first, second, and third sentences of paragraph 12. The United States lacks knowledge or information sufficient to form a belief as to the truth of all other allegations in paragraph 12.

13.     The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13.

14.     The United States admits the allegations in paragraph 14.

15.     The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15.

16.     The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16.

17.     The United States admits that insurance premiums paid or incurred in carrying on a trade or business are generally a tax-deductible business expense under the Internal Revenue Code, and that saving to self-insure is not generally a tax-deductible business expense. The United States lacks knowledge or information sufficient to form a belief as to the truth of all other allegations in paragraph 17.

18.     The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18.

19.     The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19.

20.     The United States admits that the Tax Reform Act of 1986 amended the Internal Revenue Code to add 26 U.S.C. § 831(b). The United States further admits that 26 U.S.C. § 831(b) permits smaller "microcaptive" insurance companies to elect favorable tax treatment provided they receive (as of a 2015 amendment) less than $2.2 million in annual premiums, among other requirements The United States lacks knowledge or information sufficient to form a belief as to the truth of all other allegations in paragraph 20.

21.     The United States admits that, pursuant to 26 U.S.C. § 831(b), small insurance companies may elect to exclude from their taxable income the insurance premiums they earn, provided that certain requirements are met. The United States denies all other allegations in paragraph 21.

22.     The United States denies the allegations in the fourth sentence of paragraph 22. The United States admits all other allegations in paragraph 22.

23.     The United States admits that, pursuant to 26 U.S.C. § 831(b), small insurance companies may elect to exclude from their taxable income the insurance premiums they earn, provided that certain requirements are met. The United States denies all other allegations in paragraph 23.

24.     The United States admits the allegations in the first two sentences of paragraph 24. The United States denies all other allegations in paragraph 24.

25.     The United States admits that the annual premium limit in 26 U.S.C. § 831(b) was increased by an amendment in 2015. The United States lacks knowledge or information sufficient to form a belief as to the truth of all other allegations in paragraph 25.

26.     The United States denies the allegations in paragraph 26.

27.     The United States admits the allegations in paragraph 27.

28.     The United States admits that liability for a § 6700 promoter penalty requires, among other things, a taxpayer to make or furnish, or cause another person to make or furnish, either: (1) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit which the person knows or has reason to know is false or fraudulent as to any material matter; or (2) a gross valuation

overstatement as to any material matter. The United States denies all other allegations in paragraph 28.

29.     The United States admits that the courts ruled in favor of the taxpayer in the following cases: *United Parcel Service of America, Inc. v. Comm'r*, 254 F.3d 1014 (11th Cir. 2001); *AMERCO & Subs. v. Comm'r*, 96 T.C. 18 (1991), *aff'd* 979 F.2d 162 (9th Cir. 1992); *Harper Grp. v. Comm'r*, 96 T.C. 45, 46 (1991), *aff'd* 979 F.2d 1341 (9th Cir. 1992). The United States further admits that Private Letter Rulings cannot be relied on by taxpayers other than the recipient. The United States denies all other allegations in paragraph 29.

30.     The United States admits that the term "insurance" is not defined in the Internal Revenue Code nor in the Treasury regulations. The United States further admits that, in determining whether an arrangement constitutes "insurance" for federal tax purposes, courts generally analyze whether the arrangement meets the following criteria: (1) whether the arrangement involves risk-shifting; (2) whether the arrangement involves risk-distribution; (3) whether the arrangement involves insurance risk; and (4) whether the arrangement meets commonly accepted notions of insurance. The United States further admits that determining whether an arrangement constitutes insurance is a case-by-case analysis dependent upon the particular facts and circumstances of the proposed insurance arrangement. The United States denies that the IRS has offered no guidance through revenue rulings or other publication regarding what constitutes "insurance" for federal tax purposes. The United States lacks knowledge or information sufficient to form a belief as to the truth of all other allegations in paragraph 30.

31.     The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence of paragraph 31. The United States denies all other allegations in paragraph 31.

32.     The United States admits the allegations in the first, second, and sixth sentences of paragraph 32. The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third and fourth sentences of paragraph 32. The United States denies the allegations in the fifth sentence of paragraph 32.

33.     The United States admits the allegations in the first, second, and third sentences of paragraph 33. The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth sentence of paragraph 33.

34.     The United States admits that PLR 201224018 states that "the [subject] arrangement achieves adequate risk shifting and risk distribution such that the contracts issued by Company to its insureds constitute insurance for federal income tax purposes." The United States lacks knowledge or information sufficient to form a belief as to the truth of all other allegations in paragraph 34.

35.     The United States admits the allegations in the first sentence of paragraph 35. The United States lacks knowledge or information sufficient to form a belief as to the truth of all other allegations in paragraph 35.

36.     The United States admits that the § 6700 penalty investigation regarding Clark's conduct began almost nine years before the IRS issued its final determination that she was liable for § 6700 penalties. The United States denies all other allegations in paragraph 36.

37.     The United States admits the allegations in the first sentence of paragraph 37. The United States lacks knowledge or information sufficient to form a belief as to the truth of all other allegations in paragraph 37.

38.     The United States admits the allegations in the first two sentences of paragraph 38. The United States further admits that *Avrahami* is a published opinion that is binding in the Tax Court. The United States denies all other allegations in paragraph 38.

39.     The United States admits the allegations in the first and fifth sentences of paragraph 39. The United States further admits that the Tax Court held, among other things, that the *Avrahami* microcaptive insurance company failed to "accomplish sufficient risk distribution for its arrangements to be considered 'insurance' for federal income tax purposes." 149 T.C. at 190. The United States denies all other allegations in paragraph 39.

40.     The United States admits that the Tax Court in *Avrahami* did not impose accuracy-related penalties under 26 U.S.C. § 6662(a) for the Avrahamis' deduction of captive insurance premiums. The United States denies all other allegations in paragraph 40.

41.     The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41.

42.     The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42.

43.     The United States admits that, on April 21, 2021, the IRS assessed more than $11 million in penalties against Clark pursuant to 26 U.S.C. § 6700 for her role in organizing, promoting, and selling an abusive tax shelter involving microcaptive insurance companies during tax years 2008 through 2016. The United States denies all other allegations in paragraph 43.

44.     The United States admits that the IRS issued a Revenue Agent Report describing the basis for its penalty assessments against Clark under 26 U.S.C. § 6700. The United States denies all other allegations in paragraph 44.

45.     The United States admits that the Tax Court in *Avrahami* observed that it was the first case to have considered the specific issue of deductibility of premiums paid to a microcaptive insurance company under 26 U.S.C. §§ 162 and 831(b). The United States denies all other allegations in paragraph 45.

46.     The United States admits that the Tax Court's *Avrahami* decision was issued in 2017. The United States further admits that *Avrahami* was the first case to consider the specific issue of the tax treatment of premiums paid to a microcaptive insurance company under 26 U.S.C. §§ 162 and 831(b). The United States denies all other allegations in paragraph 46.

47.     The United States denies the allegations in paragraph 47.

48.     The United States denies the allegations in paragraph 48. To the extent that the heading under paragraph 48 stating that "The IRS allowed potential § 6700 penalties to accumulate against Ms. Clark for years, rather than provide clarity," is intended to be a factual allegation, the United States denies it.

49.     The United States admits the allegations in the first and second sentences of paragraph 49. The United States lacks knowledge or information sufficient to form a belief as to the truth of all other allegations in paragraph 49.

50.     The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50.

51.     The United States admits the allegations in the second sentence of paragraph 51. The United States lacks knowledge or information sufficient to form a belief as to the truth of all other allegations in paragraph 51.

52.     The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52.

53.     The United States admits that IRS Notice 2016-66 states, in part, that "[t]he Treasury Department and the IRS recognize that related parties may use captive insurance companies that make elections under § 831(b) for risk management purposes that do not involve tax avoidance, but believe that there are cases in which the use of such arrangements to claim the tax benefits of treating the Contract as an insurance contract is improper." The United States further admits that Notice 2016-66 states, in part, that the IRS "lack[s] sufficient information to identify which § 831(b) arrangements should be identified specifically as a tax avoidance transaction." The United States further admits that Notice 2016-66 imposed certain disclosure requirements on participants in microcaptive transactions and their advisors. The United States lacks knowledge or information sufficient to form a belief as to the truth of all other allegations in paragraph 53.

54.     The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 54. To the extent that the heading under paragraph 54 stating that "The IRS boxed Clark out of litigating the merits of microcaptive insurance company taxation," is treated as a factual allegation, the United States denies it.

55.     The United States admits that the IRS audited and determined deficiencies against the Avrahamis before assessing penalties under 26 U.S.C. § 6700 against Clark. The United States denies the allegations in the first and fifth sentences of paragraph 55. The United States

lacks knowledge or information sufficient to form a belief as to the truth of all other allegations in paragraph 55. To the extent that the heading under paragraph 55 stating that "The IRS refused to permit Clark the ordinary avenues of case resolution," is treated as a factual allegation, the United States denies it.

56.     The United States admits that, during the course of the IRS's penalty examination, Clark's attorneys attempted to reach a resolution. The United States lacks knowledge or information sufficient to form a belief as to the truth of all other allegations in paragraph 56.

57.     The United States denies the allegations in paragraph 57.

58.     The United States admits the allegations in the first sentence of paragraph 58. The United States lacks knowledge or information sufficient to form a belief as to the truth of all other allegations in paragraph 58.

59.     The United States denies the allegations in paragraph 59.

60.     The United States denies the allegations in paragraph 60.

61.     The United States denies that the allegations in paragraph 61 are a complete and accurate statement of the provisions of 26 U.S.C. § 6103 or the courts' interpretations of that statute.

62.     The United States denies that the allegations in paragraph 62 are a complete and accurate statement of the provisions of 26 U.S.C. § 7431 or the courts' interpretations of that statute.

63.     The United States denies the allegations in paragraph 63.

    a.  The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63 a.

b.  The United States admits that the IRS issued a letter to one of Clark's clients on May 8, 2014. The United States denies that the letter contains a statement that "Clark was a promoter of an abusive tax shelter." The United States further asserts that any disclosures were authorized under 26 U.S.C. § 6103.

c.  The United States admits that the IRS issued a letter to one of Clark's clients on May 1, 2014. The United States denies that the letter contains the words "abusive tax shelter." The United States further asserts that any disclosures were authorized under 26 U.S.C. § 6103.

d.  The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63 d.

e.  The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63 e.

f.  The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63 f.

g.  The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63 g.

h.  The United States admits the allegations in the first and second sentences of paragraph 63 h. The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 63 h.

64.  The United States denies the allegations in paragraph 64.

65.  The United States admits the allegations in paragraph 65.

66.  The United States admits the allegations in paragraph 66.

67.  The United States admits the allegations in paragraph 67.

68.     The United States denies the allegations in paragraph 68.

69.     The United States admits the allegations in paragraph 69.

70.     The United States incorporates and re-alleges its responses to paragraphs 1 through 69 of this answer.

71.     The United States denies the allegations in paragraph 71.

72.     The United States admits that Clark made claims for refund on April 27, 2021 and the IRS denied the claims for refund by letter dated October 20, 2021. The United States denies all other allegations in paragraph 72.

73.     The United States denies the allegations in paragraph 73.

74.     The United States incorporates and re-alleges its responses to paragraphs 1 through 69 of this answer.

75.     The United States denies that the allegations in paragraph 75 are a complete and accurate statement of the provisions of 26 U.S.C. § 7431(a)(1) or the courts' interpretations of that statute.

76.     The United States denies that the allegations in paragraph 76 are a complete and accurate statement of the provisions of 26 U.S.C. § 6103 or the courts' interpretations of that statute.

77.     The United States denies the allegations in paragraph 77.

78.     The United States denies the allegations in paragraph 78.

79.     The United States denies the allegations in paragraph 79.

80.     The United States denies the allegations in paragraph 80.

WHEREFORE, with respect to Plaintiff Celia R. Clark's claims set forth in the Complaint, the United States requests that the Court enter a judgment:

A.     Denying Clark's claim for refund of penalties, interest, costs, and abatement of the remaining assessed penalties;

B.     Denying Clark's claim for damages, costs, and attorneys' fees; and

C.     Granting such further relief as the Court deems proper and just, including awarding the United States attorneys' fees and costs.

## COUNTERCLAIM

The United States of America, for its counterclaim against Celia R. Clark, alleges as follows:

1.     This Counterclaim seeks to reduce to judgment the unpaid balance of the penalties assessed against Clark under 26 U.S.C. § 6700 for tax years 2008 through 2016 (the "relevant period").

2.     The penalties at issue in this Counterclaim are the same penalties at issue in Clark's refund claim in Count I of the Complaint.

3.     This Counterclaim is commenced pursuant to 26 U.S.C. § 7401 at the request and with the authorization of a delegate of the Secretary of the Treasury and at the direction of a delegate of the Attorney General.

4.     This Court has jurisdiction over the Counterclaim pursuant to 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. § 7402.

5.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1396.

I. **Background**

6.      Clark is a tax attorney with more than thirty years of experience. She received her J.D. from the University of Chicago Law School and an LL.M. in taxation from New York University School of Law.

7.      In 2002, Clark formed her own law firm, The Law Offices of Celia R. Clark, P.L.L.C. She later changed the name of the firm to Clark & Gentry, P.L.L.C. Clark has since left Clark & Gentry. At Clark & Gentry, Clark practiced in the areas of taxation and estate planning.

*Overview of the Microcaptive Insurance Programs*

8.      From at least 2002 until 2017, Clark has largely focused her practice on so-called "microcaptive" insurance programs (the "programs").

9.      Clark's programs involve several steps, but the five main steps follow in paragraphs 10 through 14.

10.      First, Clark formed or assisted her clients in forming a purported insurance company that is owned, directly or indirectly, by the client. The newly formed company is referred to as a captive.

11.      Second, Clark drafted a contract for the provision of insurance from the captive to other companies related to it by ownership (the "insureds").

12.      Third, Clark prepared and submitted, or assisted clients in preparing and submitting, a form to the IRS electing to treat the captive as a small insurance company that is entitled to exclude its insurance premium income from its taxable income. This election turns the "captive" into a "microcaptive."

13.      Fourth, Clark drafted a reinsurance agreement in which the insured or its microcaptive paid a premium to a reinsurance company in exchange for purported insurance

15

coverage. The reinsurance company would then ultimately transfer the same premium payment and a percentage of the blended risks of all participants in the reinsurance pool to each participating microcaptive. This is referred to as the risk distribution pool.

14.     Fifth, based on Clark's advice, Clark's clients claimed a tax deduction for the amount of premiums paid to the microcaptive and/or the reinsurance company, and the microcaptives excluded all premiums received from their taxable income.

15.     From 2008 through 2016, Clark organized, promoted, and sold 310 microcaptive insurance programs to hundreds of customers (sometimes selling multiple programs to a single customer).

*Insurance for Federal Income Tax Purposes*

16.     Insurance premiums paid or incurred in carrying on a trade or business are generally a tax-deductible business expense under 26 U.S.C. § 162 and 26 C.F.R. § 1.162-1(a).

17.     Small insurance companies may elect to exclude from their taxable income insurance premiums received, as long as those premiums do not exceed $2.2 million ($1.2 million prior to 2017), and the company meets the diversification requirements outlined in 26 U.S.C. § 831(b).

18.     26 U.S.C. § 816(a) defines an insurance company as any company that issues insurance or annuity contracts or reinsures risks underwritten by insurance companies as more than half of its business.

19.     Although neither the Internal Revenue Code nor the Treasury Regulations define the term "insurance," the term has been defined through decades of caselaw, beginning as early as 1941 with *Helvering v. Le Gierse*, 312 U.S. 531, 539 (1941).

16

20.     To constitute insurance for federal income tax purposes, the arrangement must meet all of the following criteria: it must involve risk-shifting; it must involve risk distribution; it must involve insurance risk; and it must meet commonly accepted notions of insurance.

21.     Clark's programs do not meet any of these four criteria.

22.     As a result, Clark's clients claimed improper tax deductions for purported insurance premiums paid by the insureds to the microcaptives and improperly excluded the same premium payments from the microcaptives' taxable income.

## II.     Clark's Programs are not Insurance for Federal Tax Purposes

*Risk-Shifting*

23.     Clark's programs did not shift any real risk from the insured to the microcaptive.

24.     Clark crafted terms and conditions for her client's insurance policies that made it extremely unlikely that any event could satisfy all the criteria for making a claim.

25.     For example, Clark drafted terrorism insurance policies for her programs from 2008 through 2014 that required that the terrorist attack be large enough to qualify under existing federal terrorism insurance legislation, but simultaneously not occur in any large city. These conditions made it nearly impossible for any event to trigger coverage under the policy.

26.     The lack of any real risk being shifted in Clark's terrorism insurance policies is supported by the fact that not a single claim was made under any of Clark's terrorism insurance policies until after Clark was notified about the IRS investigation in 2012.

27.     Clark's programs also did not adequately shift risk because the entity that accepted the risk under the purported insurance agreement—either the microcaptive itself or a reinsurance company—could not pay claims under the contracts.

17

28.     Clark formed three reinsurance companies to pool certain risks borne by the microcaptives or companies related to them from 2008 through 2016: Pan American Reinsurance Company, Ltd. ("Pan American"), Jade Reinsurance Group, Inc. ("Jade"), and Emerald International Reinsurance, Inc. ("Emerald") (collectively, "reinsurance companies").

29.     During the relevant time period, Pan American, Jade, and Emerald did not have enough money to fully pay a qualifying loss if a claim was made. For half of the indemnity period, these reinsurance companies held onto less than 5% of the premiums they received. By the end of the indemnity period, all of the premiums flowed back to the microcaptive.

30.     As a result, the only way for Pan American, Jade, and Emerald to pay a qualifying loss would be by asking all the microcaptives in each reinsurance pooling arrangement to chip in pursuant to their agreement, and if the microcaptives refused, by taking actions to enforce their agreements. This would be an almost impossible task for the reinsurance companies, which had almost no capital and very few employees.

*Risk Distribution*

31.     In *Avrahami v. Comm'r of Internal Revenue*, 149 T.C. 144, 181-190 (2017), the Tax Court held that a microcaptive Clark created as part of one of her programs (Feedback Insurance Company, Ltd.) during the relevant period failed to adequately distribute risk both on its own and through a risk distribution pooling arrangement with Pan American.

32.     The Tax Court also held that Pan American was not a bona fide insurance company because it charged grossly excessive premiums, there was an ultralow probability of a claim ever being paid, it paid 100% of the premiums it received to the Clark-created microcaptive, and it was questionable whether Pan American had the ability to pay a qualifying loss if a claim was made. *Id.*

33.     Clark's microcaptive insurance programs did not adequately distribute risk.

34.     The microcaptives themselves did not always insure a sufficient number of unrelated parties to qualify as insurance companies for federal tax purposes. And they did not achieve sufficient risk distribution by participating in the risk pooling arrangements with Pan American, Jade, and Emerald because none of those entities were bona fide insurance companies.

35.     Pan American, Jade, and Emerald were not formed for legitimate nontax reasons; they were formed for purposes of creating the appearance of risk distribution to meet the requisite criteria for Clark's clients to claim a tax deduction.

36.     Pan American, Jade, and Emerald ultimately transferred all of the premium income they received to each participant microcaptive, resulting in a circular flow of funds.

37.     Pan American, which insured only terrorism risk, did not face any actual risk under the terrorism insurance policies it issued, as explained above. The probability of a qualifying loss was extremely low, while the premiums charged were excessively high.

38.     Unsurprisingly, not one claim was ever filed with Pan American under any of its terrorism insurance policies.

39.     Furthermore, Pan American, Jade, and Emerald did not charge actuarially determined premiums, did not issue arm's length insurance agreements, and offered purported insurance coverage that was not commercially available, as explained further in paragraphs 40 through 63 below.

*Commonly Accepted Notions of Insurance and Insurance Risk*

40.     The insurance policies that Clark drafted for her microcaptive insurance programs do not meet the commonly accepted notions of insurance, nor do they involve a real insurance risk.

41.     Between 2009 and 2015, Clark offered dozens of insurance policies through her programs, including business risk and indemnity insurance, computer operation and data insurance, kidnap, ransom, and extortion insurance, loss of key employee insurance, tax indemnity insurance, terrorism insurance, and political violence insurance.

42.     The specific coverage offered under many of these insurance policies is either not generally available in the commercial insurance market or it is not offered by commercial insurers on the same terms.

43.     Insureds in Clark's programs purchased insurance for coverage that they never had before participating in Clark's program.

44.     The premium pricing mechanism revolved entirely around a target premium amount, rather than a target coverage.

45.     Clark was responsible for hiring and overseeing actuaries.

46.     Peter Rauner of RMS Solutions, Inc. performed actuarial services for Clark's programs in 2008.

47.     Allen Rosenbach of ACR Solutions Group performed actuarial services for Clark's programs from 2009 through 2016.

48.     During the relevant time period, Clark directed Rauner and Rosenbach to manipulate the pricing of the insurance policies issued in her programs to achieve set "target" premiums.

49.     Those target premium amounts were aimed at maximizing the tax benefits available under 26 U.S.C. §§ 831(b) and 162. Specifically, Clark's goal was to achieve a premium amount as close as possible to the annual premium limit in § 831(b) ($1.2 million during the relevant time period) without exceeding it. That way, the microcaptive could exclude all the insurance premium income from its taxable income and the insured could deduct all premiums paid.

50.     Likewise, if Rauner or Rosenbach determined a premium price above the annual premium limit, Clark directed them to revise their calculations to drop the amount below the "maximum."

51.     Accordingly, the premium prices determined for Clark's programs were not actuarily determined premiums.

52.     Not one claim was filed under any of the insurance policies in Clark's program until December 2010.

53.     Over the seven policy years from 2009 through 2015, total premiums paid to Clark-formed microcaptives exceeded $450 million.

54.     Over those same seven years, approximately $6.9 million in claims were filed (but not necessarily paid) for all the microcaptives. Assuming those claims were paid, this yields a seven-year loss ratio of approximately 1.5%.

55.     As explained above, the terms and conditions in Clark's insurance policies, such as terrorism risk insurance, made it extremely unlikely that any event could satisfy all the criteria for making a claim.

56.     The microcaptives that Clark formed as part of her programs were not created for legitimate nontax reasons; they were created for purposes of manufacturing a tax deduction at the

insured level and nontaxable income at the microcaptive level. And in many cases the premium payments flowed right back to the insured or a company related to the insured from the microcaptive, resulting in no true economic loss to the insured.

57.     The purported insurance and reinsurance contracts entered into as part of Clark's programs were not arm's length contracts.

58.     No rational business owner would purchase the purported insurance contracts issued by Clark's microcaptives and reinsurance companies from a commercial insurer at the premium levels charged absent the tax benefits promised by Clark.

59.     Clark sold her captive insurance programs directly to customers and through other attorneys, accountants, and financial advisors.

60.     As part of her marketing efforts, Clark attended various conferences where she discussed her microcaptive insurance programs.

61.     Clark's marketing materials focus on the tax benefits of the programs.

62.     Clark's discussions with prospective and current clients focused on the tax benefits of the programs.

63.     The Tax Court in *Avrahami* held that a microcaptive Clark created as part of one of her programs during the relevant period did not provide insurance in the commonly accepted sense because it was not operated like an insurance company, it issued policies with unclear and contradictory terms, and it charged wholly unreasonable premiums. 149 T.C. at 192-97.

## III.     Clark Violated § 6700

64.     26 U.S.C. § 6700 imposes a penalty on any person who, in connection with organizing, promoting, or selling a plan or arrangement, or assisting in organizing, promoting or selling plan or arrangement, makes or furnishes or causes another person to make or furnish:

(1) a statement with respect to the allowability of any tax deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter; or (2) a gross valuation overstatement as to any material matter.

65.     Clark's microcaptive insurance programs constitute a "plan or arrangement" within the meaning of 26 U.S.C. § 6700.

66.     Clark organized or participated in the organization of the microcaptive insurance programs from 2008 through 2016.

67.     Clark structured the captive insurance programs, created the microcaptive entity for each program, drafted the insurance policies, and designed the reinsurance and risk distribution pooling arrangements.

68.     Clark sold or participated in the sale of the microcaptive insurance programs from 2018 through 2016.

69.     In connection with organizing and selling the microcaptive insurance program, Clark made or furnished, or caused another person to make or furnish, false or fraudulent statements regarding the allowability of a deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of participating in the program.

70.     Clark falsely represented to her clients that the premiums paid as part of the microcaptive insurance programs would be treated as tax-deductible insurance premiums of the insured under 26 U.S.C. § 162 and nontaxable insurance premium income of the microcaptive under 26 U.S.C. § 831(b).

71.     For example, Clark falsely stated in her retainer agreements with clients that the microcaptive insurance company created under the program would be tax qualified under 26 U.S.C. § 831(b) as insurance.

72.     Clark also falsely stated in marketing materials presented or furnished to clients that the microcaptive insurance companies formed as part of the program may elect under 26 U.S.C. § 831(b) to be taxed only on investment income and may exclude premium income up to $1.2 million.

73.     The false statements that Clark made were material because such statements would substantially impact the decision-making process of a reasonably prudent investor considering whether to participate in the program.

74.     Clark knew or had reason to know that these statements were false or fraudulent.

75.     Given Clark's education and experience, she knew or had reason to know that the participants in her programs were not entitled to the tax benefits she stated were available, including the client's ability to deduct payments made to the microcaptive as insurance premiums under 26 U.S.C. § 162 and the captive's ability to exclude those same premiums from income under 26 U.S.C. § 831(b).

76.     During the relevant time period, and given her level of education and experience, Clark knew or had reason to know that an arrangement must satisfy the following four criteria to be treated as insurance for federal income tax purposes: it must involve insurance risk; it must involve risk-shifting; it must involve risk distribution; and it must meet commonly accepted notions of insurance.

77.     During the relevant time period, Clark knew or had reason to know that there was vast caselaw and IRS guidance interpreting those four criteria to determine whether an arrangement is insurance for federal income tax purposes.

78.     During the relevant time period, Clark knew or had reason to know that the programs that she created met none of the four criteria for insurance for federal tax purposes because the programs did not involve insurance risk; they did not involve risk-shifting; they did not involve risk distribution; and they did not meet commonly accepted notions of insurance.

79.     During the relevant time period, Clark knew or had reason to know that the terms and conditions in the insurance policies she drafted made it extremely unlikely that any event could satisfy all the criteria for making a qualifying claim.

80.     During the relevant time period, Clark knew or had reason to know that the microcaptives and reinsurance companies she created were not able to fully pay a qualifying loss if a claim was made.

81.     During the relevant time period, Clark knew or had reason to know that the microcaptives and reinsurance companies she created were not bona fide insurance companies.

82.     During the relevant time period, Clark knew or had reason to know that the specific coverages Clark offered under many of the insurance policies she drafted for the programs are not available in the commercial insurance market or not offered by commercial insurers on the same terms.

83.     During the relevant time period, Clark knew or had reason to know that clients participated in her microcaptive insurance programs due to the tax savings it offered.

84.     During the relevant time period, Clark knew or had reason to know that the premium prices determined for her programs were not actuarily determined premiums.

85.     During the relevant time period, Clark knew or had reason to know that the microcaptives in her programs exhibited a circular flow of funds through the reinsurance programs and transfers of money from the microcaptive back to the insured or an entity related to the insured.

*The Penalty Assessments*

86.     Clark, through her law firm, charged clients various fees for participating in her programs, including risk distribution fees, actuarial fees, legal fees, and retainer fees.

87.     From 2008 through 2016, Clark, through her law firm, earned over $23 million in fees from the microcaptive insurance programs.

88.     Based on Clark's conduct, and in accordance with 26 U.S.C. § 6700(a)(2), a delegate of the Secretary of the Treasury assessed penalties against Clark equal to 50 percent of the gross income she derived from the programs during the relevant period. Those penalties were assessed by a delegate of the Secretary of the Treasury against Clark on April 12, 2021 as follows:

| Tax Year | Assessment Amount | Balance Due as of January 17, 2022 |
|---|---|---|
| 2008 | $1,041,265 | $879,386 |
| 2009 | $976,993 | $849,776 |
| 2010 | $1,297,870 | $1,128,871 |
| 2011 | $1,191,450 | $1,036,308 |
| 2012 | $1,001,000 | $870,656 |
| 2013 | $1,776,575 | $1,545,242 |
| 2014 | $1,551,963 | $1,349,878 |
| 2015 | $1,642,063 | $1,428,246 |
| 2016 | $1,157,750 | $1,006,996 |
| **Total** | **$11,636,929** | **$10,095,359** |

89.     Notice of the assessments and demand for payment were given to Clark on or about the dates of the assessments.

26

90.     Despite notice and demand for payment, Clark has not fully paid the balance of these assessments.

91.     The outstanding balance of the assessments remains unpaid, with statutory interest and additions continuing to accrue.

WHEREFORE, the United States respectfully requests that the Court enter judgment in its favor and against Celia R. Clark as follows:

A.      Enter a money judgment in favor of the United States and against Clark in the amount of $10,095,359, plus statutory interest and additions accruing after January 17, 2022; and

B.      Grant the United States its costs and such other and further relief as the Court deems just and proper.

Dated: February 24, 2022                    Respectfully submitted,

                                            DAVID A. HUBBERT
                                            Deputy Assistant Attorney General

                                            **Lauren A. Darwit**
                                            LAUREN A. DARWIT
                                            Fla. Special Bar No. A5502814
                                            Lauren.A.Darwit@usdoj.gov
                                            JOHN P. NASTA, JR.
                                            Fla. Bar No. 1004432
                                            John.Nasta@usdoj.gov
                                            Trial Attorneys, Tax Division
                                            U.S. Department of Justice
                                            P.O. Box 7238
                                            Washington, D.C.  20044
                                            Telephone:     (202) 307-5892 (LAD)
                                            Facsimile:     (202) 514-6770

                                            *Of Counsel:*
                                                JUAN ANTONIO GONZALEZ
                                                United States Attorney
                                                Southern District of Florida

                                                *Attorneys for Defendants*