**Internal Revenue Service**
**2670 Industrial Highway, York, PA 17402**

**Department of the Treasury**
**Small Business/Self-Employed**

Date: October 18, 2017

Examiner:
  Julie Hersh

Examiner's Employee Identification Number:
  831825

Caplin & Drysdale, Chartered
Attn: Mark D. Allison, Esq. and Rachel L. Partain, Esq.
600 Lexington Avenue, 21st Floor
New York, NY 10022

Contact Telephone Number:
  717-840-6017

Fax Number:
  888-850-6928

Sent via UPS: tracking code # 1Z 057 89W 01 9897 6906

Dear Mark D. Allison, Esq. and Rachel L. Partain, Esq.:

Please find enclosed copies of Information Document Requests #2 and #3.  Please provide the documents and data in its native format as expressly stated in the attachments to the Information Document Requests.   Also included is IDR #5, which is the exact same information requested in IDR #4.  Provide the IDR #5 response in accordance with the format described in the attachment.

IDR #5 has a response date of October 31, 2017.   Please respond with IDRs #3 and #4 in the format requested in the attachments by November 17, 2017.

All productions shall be sent in a self-extracting encryption file along with the corresponding password.  Alternatively, the data can be encrypted using Secure Zip and sent along with the corresponding  password.

Sincerely yours,

Julie Hersh
Internal Revenue Agent

Cc:  Celia R. Clark, Esq.

| **Form 4564** | **Department of the Treasury**<br>**Internal Revenue Service**<br>**Information Document Request** | **Request Number**<br>**5** |
|---|---|---|
| **To: (Name of Taxpayer and Company, Division or Branch)**<br><br>Celia R. Clark, Esq.<br>240 East 47th Street, Apt. 28 E<br>New York, NY 10017 | **Subject:**<br>**6694/6695/6700/6701/7402/7407/7408**<br>**Investigation** | |
| | **Submitted to:**<br>Celia R. Clark, Esq.,<br>Rachel L. Partain, Esq. | |
| | **Dates of Previous Requests: 4/27/2016** | |

**Description of Documents Requested:**

**Requested Information:**

The documentation being requested below is for Jade Reinsurance Group, Inc. ("Jade") and Emerald International Reinsurance, Inc. ("Emerald"), January 1, 2012 or since inception, whichever is earlier to the date you respond to this Information Document Request (IDR). If information requested below was provided in a previous Information Document Response, please identify the bate stamp number to reference your response to the item requested below. This request also covers the entities for which Celia R. Clark is an owner/founder, directly or indirectly (e.g. Shareholder, Member, Partner, Sole Proprietor), Officer, Director or Trustee which includes the business activities for which Celia R. Clark is involved, directly or indirectly, in the marketing, organization, creation, operation, administration, counseling and/or dissolution of any insurance arrangements/structure in whole or in part.

1. Provide a copy of your fee schedules for marketing or organizing any insurance arrangement/structure in whole or in part including but not limited to fees related in any way to Jade and Emerald.

2. Provide copies of any and all records of payments received from clients related in any way to Jade and Emerald or any insurance arrangement/structure in whole or in part. Include general ledgers and cash receipts journals.

3. As requested in Information Document Request # 3, for all clients, provide all information and documentation collected from the insureds, documents maintained or summarized by Celia Clark and her law firm including client summary sheets maintained internally, statements or e-mails discussing their premiums and policies, and all applications, financials, tax returns, commercial policies and any additional information collected or maintained for or from the insureds that would be forwarded to the actuary to determine all insurance premiums for each client. Please provide the pricing model and the actuarial report and in native format showing all calculations performed by the actuary to determine the premium for every policy priced for each indemnity period offered.

Please refer to Attachment to IDR #5 specifying how the documents and data should be provided.

Please keep in mind that additional information may be requested at a later date.

| **Information Due By** | **10/31/2017** | **At Next Appointment** | ☐ | **Mail In** | **X** |
|---|---|---|---|---|---|

| | **Name and Title of Requestor:**<br>**Julie Hersh, Revenue Agent, Badge # 831825**<br>**Steven Rowe, Group Manager, 937-610-2137** | **Date:**<br>**10/18/2017** |
|---|---|---|
| **FROM** | **Office Location:**<br>2670 Industrial Highway, York, PA 17402<br>Phone 717-840-6017   Fax 888-850-6928 | **Page 1** |

Form 4564

**Attachment to IDR #5**
**Production Specifications for**
**Electronically Stored Information [ESI] and Hard Copy Documents – 2017**

**Collection of Electronically Stored Information [ESI]**

There should be careful consideration given to the methodology, implementation and documentation of ESI collection to ensure that all responsive data and metadata are preserved in the collection process. Please see Appendix A for ESI terms and definitions.

**1.      Production Specification Modifications**

Any modifications or deviations from the Production Specifications may be done by agreement of the parties, and these modifications or deviations should be set forth in a written agreement. Any responsive data or documents that exist in locations or native forms not discussed in these Production Specifications remain responsive and arrangements should be made with respondent's counsel to facilitate their production.

**2.      Production Format for ESI and Hard Copy Documents**

Responsive ESI and hard copy documents shall be produced in the format outlined below. All ESI shall be produced as TIFF images with Optical Character Recognition (OCR). For ESI listed in Sections 4-9, the files should be produced as TIFF images with OCR if possible. Otherwise, the files should be produced as native files with a TIFF image placeholder and extracted text. All applicable metadata shall be extracted and produced (see Appendix B).  All data shall be provided in Concordance load file format.

<u>Image File Format</u>

All images, paper documents scanned to images, and ESI, shall be produced as follows:

- 300 dpi single-page TIFF files, CCITT Group IV, 2D Compression
- TIFF image files shall be stored with the '.tif' file extension
- TIFF image file names shall include the unique Bates number burned into each image
- TIFF image files shall be uniquely and sequentially Bates numbered, with the Bates numbers endorsed on each image
    - Bates numbers shall not exceed 30 characters in length and shall include leading zeros in the number portion. Bates numbers shall be a unique number given to each page (for image files) or to each document (for native files). The Bates numbering convention shall remain consistent for the duration of the case. There shall be no spaces between the prefix and the numeric value. If suffixes are required, please use dash notation.
    - Bates Number Sample Format
      PREFIX-00000001
      PREFIX-00000001-001
      PREFIX-00000002
- No image folder shall contain more than 2000 TIFF images files

1

**Attachment to IDR #5**
**Production Specifications for**
**Electronically Stored Information [ESI] and Hard Copy Documents – 2017**

### Text File Format

All images, paper documents scanned to images, and ESI, shall be produced as follows:

- ASCII document level TXT files
- TXT files shall contain extracted text for all ESI and OCR text for all documents where text cannot be extracted
- TXT files shall be stored with a '.txt' file extension
- TXT file names should be identical to the starting Bates number of the image
- No text folder shall contain more than 2000 TXT text files

An Exception Report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images. The report shall include the Bates number corresponding to each image.

### Native File Format

If a file cannot be imaged and is mentioned in Sections 4-9, the file shall be produced natively with a corresponding TIFF image placeholder and extracted text or, if applicable, a JPEG image file.

The native file shall be assigned a single Bates number for the entire file, which shall be endorsed on the corresponding TIFF image placeholder and used as the filename for the image file and text file (see Section 2 above for TIFF and Text file formats); however, no alteration shall be made to the filenames or extensions of the native files themselves. The native file shall be placed in a separate folder on the production media.

Example: AutoCAD file containing DWG and DXF files. These files shall be processed and produced as single-page JPEG image files or can be accompanied by a viewer if such files cannot be viewed in a generic application.

### Hard Copy Documents

All hard copy materials shall be scanned in as TIFF image files (see above). These files shall reflect accurate document unitization including all attachments and container information. Unitization in this context refers to physically identifying and marking the boundaries of documents within the collection, where a document is defined as the smallest physical fastened unit within a bundle (ex: staples, paperclips, rubbers bands, folders or tabs in a binder).

**Attachment to IDR #5**
**Production Specifications for**
**Electronically Stored Information [ESI] and Hard Copy Documents – 2017**

All paper documents scanned to images shall be produced as follows:

- All documents scanned in black and white TIFF image format
    - If an image requires color then the documents shall be scanned in as color 300 dpi single-page JPEG image files [Color is required when color in the document adds emphasis to the information in the document or is itself information that would not be readily apparent on the face of a black and white image]
- All documents with post-it notes/flags scanned in one copy with and one copy without post-it notes/flags
- All documents with spines/covers scanned in with the spine/cover as the first page of the document
- All documents scanned in as follows:
    - Each individual box = one electronic file folder (ex: box 1 = folder 1)
        - All electronic folders should have folder names (use box label information – example: Smith's Marketing Material 2015)
    - Each paper clipped/stapled group of documents = one electronic file
        - All electronic files should have the subject field populated (example: Smith's Marketing Plan April 2015)
- Objective coding  shall be produced per metadata/database fields in Appendix B

<u>**Concordance Load Files**</u>        [All load files <u>MUST</u> contain field name headings]

Image files shall be accompanied by a Concordance Image load file that associates each Bates number with its corresponding single-page TIFF image file. The load file should also contain the image file path for each Bates numbered page.

- Image load file Sample Format
  ABC_00000001,PRODVOL001,D:\PRODVOL001\Images\001\ABC_00000001.TIF,Y,,,2
  ABC_00000002,PRODVOL001,D:\PRODVOL001\Images\001\ABC_00000002.TIF,,,,
  ABC_00000003,PRODVOL001,D:\PRODVOL001\Images\001\ABC_00000003.TIF,Y,,,1

Text files shall be accompanied by a Concordance Text load file that associates each document with its corresponding multi-page TXT text file. The load file should also contain the text file path for each text file path.

- Text load file Sample Format
  ABC_00000001,PRODVOL001,D:\PRODVOL001\Text\001\ABC_00000001.TXT

3

**Attachment to IDR #5**
**Production Specifications for**
**Electronically Stored Information [ESI] and Hard Copy Documents – 2017**

Metadata field information shall be located in a Concordance .dat file containing the delimited text that will populate fields in a searchable, flat database environment. The file should contain the required fields listed in Appendix B.

- Text delimited load files are defined using the standard Concordance delimiters.
  Field Separator          ¶ or Code 020
  Text Qualifier           þ or Code 254
- The text files should also contain hyperlinks to applicable native files, such as Microsoft Excel or PowerPoint files and their native file paths.
- There should be one line for every record in a production.
- The extracted text/OCR should not be in the .dat file but should be in a text load file as listed above
- The load file must contain a field map/key listing the metadata/database fields in the order they appear within the data file. For example, if the data file consists of a First Page of a Record (starting Bates), Last Page of a Record (ending Bates), Document Date, File Name, Title, then the structure may appear as follows:
  þBEGDOCþ¶þENDDOCþ¶þDOCDATEþ¶þFILENAMEþ¶þTITLEþ

Directory and folder structure

\PRODVOL001\Data
\PRODVOL001\Images<Image files location (can include subfolders as needed)
\PRODVOL001\Natives<Native files location (can include subfolders as needed)
\PRODVOL001\Text<Extracted Text/OCR files location (can include subfolders as needed)

3.      Searching, De-Duplication, Near-Dupe Identification, Email Conversation Threading and Other Culling Procedures

Global de-duplication may be done, but the file path and custodian must be provided for each duplicate document in an Exception Report in .csv format. The producing party shall not use any other procedure to cull, filter, group, separate, or de-duplicate, or near-de-duplicate, (i.e., reduce the volume of) responsive material without discussion and written agreement of the parties. All objective coding shall be produced as additional metadata fields.

Prior to using any analytic software or technology to search, identify, or review potentially responsive material, including, but not limited to, technology assisted review (TAR), the producing party shall discuss these procedures with respondent's counsel.

4

**Attachment to IDR #5**
**Production Specifications for**
**Electronically Stored Information [ESI] and Hard Copy Documents – 2017**

4.      Hidden Text, Embedded Files and Portfolio PDFs

Hidden text (ex: track changes, hidden columns, mark-ups, notes) shall be expanded and produced.  If a file cannot be expanded, it shall be produced natively.

Non-graphic embedded objects (Word documents, Excel spreadsheets, Wav files, etc.) shall be extracted and produced. For purposes of production, the embedded files shall be treated as attachments and the parent/child relationship should be preserved.

Portfolio PDF files shall be extracted and produced. For purposes of production, all email files and attachments in the portfolio shall be treated as families, preserving the parent/child relationship. The remaining files in the portfolio shall be treated as individual documents.

5.      Email

Email located within a repository or database:

Email repositories or databases (ex: Outlook PST, Lotus NSF, Google MBOX, etc.) contain a variety of items including messages, calendars, contacts, tasks and notes. For purposes of production, responsive items include all of these items as well as the metadata/database fields outlined in Appendix B for Email, including but not limited to, all parent items (mail, calendar, contacts, tasks, notes) and child files (attachments to emails) with the parent/child relationship preserved. Email from systems other than Microsoft Exchange shall be produced after discussion and written agreement of the parties as to the format for the production of such data.

Email located outside a repository or database:

Any email or other parent items (calendar, contacts, tasks, notes) found and collected outside of an email repository shall be produced in the same format as email found in a repository or database. For purposes of production, responsive items include all of these items as well as the metadata/database fields outlined in Appendix B for Email, including but not limited to, all parent items (mail, calendar, contacts, tasks, notes) and child files (attachments to emails) with the parent/child relationship preserved.

6.      Spreadsheet Files

Spreadsheet files (ex: Excel) shall be produced in native file format "as kept in the ordinary course of business." The file produced should maintain the integrity of all source, custodian, application, embedded and related file system metadata.

**Attachment to IDR #5**
**Production Specifications for**
**Electronically Stored Information [ESI] and Hard Copy Documents – 2017**

7.      Structured Data

Prior to any production of responsive data from a structured database (ex: QuickBooks OR proprietary applications), the producing party shall first identify the database type and version number, provide the database dictionary and any user manuals, or any other documentation describing the structure and/or content of the database and a list of all reports that can be generated from the database. The list of reports shall be produced in native Excel format. Data produced from these applications shall be produced after discussion and written agreement of the parties about the format for the production of such data.

8.      Photographs with Native File or Digitized ESI

Photographs shall be produced as single-page JPEG files with a resolution equivalent to the original image as they were captured or created.

9.      Instant Messenger Data, Voicemail Data, Audio Data, Video Data and Social Media

The producing party shall identify, collect, and produce any and all responsive data which may be stored in audio or video recordings, cell phone/PDA/Blackberry/smart phone data, tablet data, voicemail messaging data, instant messaging, text messaging, conference call data, video/audio conferencing (ex: WebEx), social media (ex: Twitter), and similar technologies. However, such data, logs, metadata or other related files shall be produced after discussion and written agreement of the parties about the format for the production of such data.

10.     Encrypted Files

Responsive data that is protected by a password, encryption key, or other encryption method, shall be decrypted prior to processing for production.

   The unencrypted files shall be produced according to Section 2.

   If such protected data is encountered but unable to be processed, each file or container shall be reported as an exception in the accompanying Exception Report, pursuant to section 14, and shall include all available metadata associated with the data, including custodian information.

11.     ESI from Non-PC or Non-Windows based Systems

If responsive ESI is stored or located in a non-PC or non-Windows system (ex: Apple, UNIX, Android), the ESI shall be produced after discussion and written agreement of the parties about the format for the production of such data.

6

**Attachment to IDR #5**
**Production Specifications for**
**Electronically Stored Information [ESI] and Hard Copy Documents – 2017**

12.    Compliance and Adherence to Generally Accepted Technical Standards

Productions shall be in conformance with standards and practices established by the National Institute of Standards and Technology (NIST), US National Archives & Records Administration (NARA), American Records Management Association (ARMA), American National Standards Institute (ANSI), International Organization for Standardization (ISO) and/or other US Government or professional organizations.

13.    Read Me Text File

All deliverables shall include a 'read me' text file at the root directory containing: total number of records, total number of images/pages or files, mapping of fields to plainly identify field names, types, lengths, and formats. The file shall also indicate the field name to which images will be linked for viewing, date and time format, and confirmation that the number of files in load files matches the number of files produced.

14.    Exception Report

An Exception Report, in .csv format, shall be included, documenting any production anomalies utilizing the electronic document number assigned during the collection, processing, and production phases.

15.    Media Formats and Security for Delivery of Productions

Produced data shall be free from computer viruses. Any files found to include a virus shall be quarantined by the producing party and noted in a log to be provided to respondent's counsel.

All productions shall be sent in a self-extracting encryption file along with the corresponding password. Alternatively, the data can be encrypted using Secure Zip and sent along with the corresponding password. No other encryption software shall be used unless with consent of respondent's counsel.

Productions shall be delivered on any of the following media and must be labeled with the case name, production date, bates range, and producing party:

CD-ROMs and/or DVD-R formatted to ISO/IEC 13346 and Universal Disk Format 1.02 specifications

External hard drives (USB 3.0 or higher, Firewire or eSATA, formatted to NTFS format) or flash drives formatted to NTFS format

16.    Transmittal Letter to Accompany Deliverables

All deliverables should be accompanied by a transmittal letter including the case name and number, production date, bates range, and producing party.

7

**Attachment to IDR #5**
**Production Specifications for**
**Electronically Stored Information [ESI] and Hard Copy Documents – 2017**
**APPENDIX A – ESI Terms and Definitions**

1. **Cloud Computing** – With cloud computing, the user accesses a remote computer hosted by a cloud service provider over the Internet or an intranet, to access software programs or create, save, or retrieve data, for example, to send messages or create documents, spreadsheets, or databases. Examples of cloud computing include Gmail, Hotmail, Yahoo! Mail, Facebook, and on-line banking.

2. **Document unitization** – Document unitization is the process of determining where a document begins (its first page) and ends (its last page), with the goal of accurately describing what was a "unit" as it was received by the party or was kept in the ordinary course of business by the document's custodian. A "unit" includes attachments, for example, an email with an attached spreadsheet.

   Physical unitization utilizes actual objects such as staples, paper clips and folders to determine pages that belong together as documents.

   Logical unitization is the process of human review of each individual page in an image collection using logical cues to determine pages that belong together as documents. Such cues can be consecutive page numbering, report titles, similar headers and footers, and other logical cues.

3. **ESI [Electronically Stored Information]** – Any information created, stored, or utilized with digital technology. Examples include, but are not limited to, word-processing files, e-mail and text messages (including attachments); voicemail; information accessed via the Internet, including social networking sites; information stored on cell phones; information stored on computers, computer systems, thumb drives, flash drives, CDs/DVDs, tapes and other digital media.

4. **Extracted Text** – The text of a native file extracted during ESI processing of the native file, most commonly when native files are converted to TIFF format. Extracted text is more accurate than text created by the OCR processing of document images that were created by scanning and will therefore provide higher quality search results.

5. **Image of a document or document image** – An electronic "picture" of how the document would look if printed. Images can be stored in various file formats, the most common of which are TIFF and PDF. Document images, such as TIFF and PDF, can be created directly from native files, or created by scanning hard copy.

8

**Attachment to IDR #5**
**Production Specifications for**
**Electronically Stored Information [ESI] and Hard Copy Documents – 2017**

6. **Load File** – A cross reference file used to import images or data into databases. A data load file may contain Bates numbers, metadata, path to native files, coded data, and extracted or OCR text. An image load file may contain document boundary, image type and path information. Load files must be obtained and provided in software-specific formats to ensure they can be used by the receiving party.

7. **Metadata** – Data that describes characteristics of ESI, for example, the author, date created, and date last accessed of a word processing document. Metadata is generally not reproduced in full form when a document is printed to paper or electronic image. Metadata can describe how, when and by whom ESI was created, accessed, modified, formatted or collected. Metadata can be supplied by applications, users or the file system, and it can be altered intentionally or inadvertently. Certain metadata can be extracted when native files are processed for litigation. Metadata is found in different places and in different forms. Some metadata, such as file dates and sizes, can easily be accessed by others; other metadata can be hidden or embedded and unavailable to computer users who are not technically adept. Note that some metadata may be lost or changed when an electronic copy of a file is made using ordinary file copy methods.

8. **Native File** – A file as it was created in its native software, for example a Word, Excel, or PowerPoint file, or an email in Outlook.

9. **OCR [Optical Character Recognition]** – A process that converts a picture of text into searchable text. The quality of the created text can vary greatly depending on the quality of the original document, the quality of the scanned image, the accuracy of the recognition software and the quality control process of the provider. Generally, OCR does not handle handwritten text or text in graphics well. OCR conversion rates can range from 50% to 98% accuracy depending on the underlying document. A full page of text is estimated to contain 2,000 characters, so OCR software with even 90% accuracy would create a page of text with approximately 200 errors.

10. **Parent /child relationships** – Related documents are described as having a parent/child relationship, for example, where the email is the parent and an attached spreadsheet is the child.

11. **PDF – "Portable Document Format"** – A file format created by Adobe that allows a range of options, including electronic transmission, viewing, searching, and depending on the version of Adobe used, editing.

12. **TIFF – "Tagged Image File Format"** – An industry-standard file format for storing scanned and other digital black-and-white, grey-scale, and full-color images.

9

**Attachment to IDR #5**
**Production Specifications for**
**Electronically Stored Information [ESI] and Hard Copy Documents – 2017**
<u>**APPENDIX B - Required Metadata/Database Fields**</u>

**Required Metadata/Database Fields applies to two groups:**

- **ALL ESI** (electronically stored information including hard copy documents because they are scanned to TIFF image)

- **Email and attachments** (document "families" relate ONLY to emails and their attachments)

**All fields should be populated to the extent data for that field exists and is easy to obtain.**
> Example 1 – BEGATTACH field should only be populated if the document is part of a family
> *Applies to Email and Attachments*
>
> Example 2 – SUBJECT field should only be populated if there is a subject
> *Applies to All ESI (not email)*

| FIELD NAME | FIELD DESCRIPTION | FIELD TYPE | FIELD VALUE | APPLIES TO |
|---|---|---|---|---|
| BEGDOC | Starting Bates number (including prefix) – No spaces | Text | 60 | All ESI |
| ENDDOC | Ending Bates number (including prefix) – No spaces | Text | 60 | All ESI |
| BEGATTACH | Starting Bates number of Parent in a family group (only populate this field if the document is part of a family) | Text | 60 | All ESI |
| ENDATTACH | Ending Bates number of last Attachment (only populate this field if the document is part of a family) | Text | 60 | All ESI |
| PARENTID | Starting Bates number of Attachment's parent (only populate this field if the document is part of a family) | Text | 60 | Email and attachments |
| ATTRANGE | Starting Bates number of Parent and Ending Bates number of last Attachment in a family group (separated by a hyphen and populated for all documents in the family group) | Text | 60 | Email and attachments |
| ATTACHMT | Attachment document list (should be all Attachment's | Text (semi-colon | Unlimited | All ESI |

**Attachment to IDR #5**
**Production Specifications for**
**Electronically Stored Information [ESI] and Hard Copy Documents – 2017**

| | | starting Bates numbers) | delimited) | | |
|---|---|---|---|---|---|
| ORGANIZATION | Organization where data was collected from | Text | 160 | All ESI |
| VOLUME | Production Volume Number (ex: VOL001) | Number | 20 | All ESI |
| PARAREQUESTNUM | Subpoena/request paragraph number to which the document is responsive | Text (semi-colon delimited) | Unlimited | All ESI |
| CUSTODIAN | Custodian/Source (format: Last, First OR ABC Dept) | Text | 160 | All ESI |
| AUTHOR | Creator of the document | Text | 500 | All ESI |
| TO | Recipient (Last name, First name) | Text (semi-colon delimited) | Unlimited | Email and attachments |
| FROM | Author (Last name, First name | Text | 160 | Email and attachments |
| CC | Carbon Copy Recipients (Last name, First name) | Text (semi-colon delimited) | Unlimited | Email and attachments |
| BCC | Blind Carbon Copy Recipients (Last name, First name) | Text (semi-colon delimited) | Unlimited | Email and attachments |
| EMAILSUBJECT | Subject line of the Email message | Text | Unlimited | Email |
| SUBJECT | Subject /Document Title | Text | Unlimited | All ESI (except email) |
| DATECREATED | Date Created | Date | MM/DD/YYYY | All ESI |
| DATELASTMOD | Date Last Modified | Date | MM/DD/YYYY | All ESI |
| DATESENT | Date Sent | Date | MM/DD/YYYY | Email |
| DATERCVD | Date Received | Date | MM/DD/YYYY | Email |
| MAILSTORE | Name of the email file (ex: custodian name.pst) | Text | Unlimited | Email |
| HEADERS | Content of email msg header | Text | Unlimited | Email |
| MSGCLASS | Exchange Message class or equivalent | Text | 60 | Email |
| CONVINDEX | Conversation Index (Email system ID used to track replies, forwards, etc.) | Text | Unlimited | Email |
| FILENAME | File name of file as it appeared in its original location | Text | Unlimited | All ESI |
| APPLICATION | Application used to create the native file (ex: Microsoft | Text | 160 | Email and attachments |

11

**Attachment to IDR #5**
**Production Specifications for**
**Electronically Stored Information [ESI] and Hard Copy Documents – 2017**

| | Office Word) | | | |
|---|---|---|---|---|
| FILE EXTENSION | File Extension for the file (ex: .doc, .pdf) | Text | 10 | All ESI |
| RECORD TYPE | Use the following choices: Image, Email, EDoc, Image Attachment, Email Attachment, EDoc Attachment (populate this field for every document) | Text | 60 | All ESI |
| FILE SIZE | Native File Size in bytes | Number | 10 | All ESI |
| MD5 HASH | MD5 Hash value used for de-duplication (Email hash values must be run with the Email and all its attachments) | Text | Unlimited | All ESI |
| PGCOUNT | Number of pages in a document | Number | 10 | All ESI |
| COMMENTS | Comments from the body of the file | Text | Unlimited | All ESI |
| NATIVELINK | Relative file path location to the native file | Text | Unlimited | All ESI |
| TEXT FILE PATH | Relative file path of the text file associated with either the extracted text or OCR | Text | Unlimited | All ESI |
| HIDDENTEXT | True if document contains hidden text ,otherwise False | Text | Unlimited | All ESI |

12

| Form **4564** (Rev. September 2006) | Department of the Treasury – Internal Revenue Service<br>**Information Document Request** | Request Number<br>**#0002** |
|---|---|---|

| **To:** (Name of Taxpayer and Company, Division or Branch)<br><br>**Celia R Clark, Esq.**<br><br>570 Lexington Avenue,<br>New York, NY 10022 | **Subject:**  IRC Sec 6700/6701 Investigation |
|---|---|
| | **Submitted to:**<br>Rachel L. Partain, Esq.; Celia R Clark, Esq. |
| | **Dates of Previous Requests:** |

**Please provide the items listed below. Refer to Attachment A, incorporated herein by reference, for instructions and definitions.**

### A.  Actuarial Transactions / Interactions:

For the time period beginning with the first formation, in whole or in part, of any captive insurance arrangement for anyone, and ending with the date of compliance with this request, please provide:

1. A complete copy of each engagement letter with actuaries, including all attachments, addendums, schedules and revisions.

2. A complete copy of each actuarial report issued/provided (to Clark and/or Clark clients, and/or others designated in a Clark captive arrangement organization) by the actuaries, including all attachments, addendums, schedules and revisions. Specifically including all separate competitive market analysis; and electronic versions of the actuarial reports revealing the detailed premium calculations.

3. Copies of all documents providing and/or supporting advice provided by the actuary to Clark and/or her clients and/or others designated in Clark captive arrangements.

4. Copies of all correspondence, paper and/or electronic, between the actuaries or any subordinate or related party of the actuary with:

    i. Clark, or any subordinate or related party of Clark

    ii. All clients of Clark

    iii. All reinsurers used in Clark captive arrangements

    iv. All captive managers/administrators and/or captive management or administrative companies

    v. All others in any aspect of Clark captive arrangements

5. Complete disclosure of all Clark interests in actuaries, to include but not limited to, name, date acquired, type of interest, how acquired, acquisition price, beneficial value, date of disposal and any others. "Clark interests" includes ownership interests or otherwise, direct and/or indirect interests, including any entity over which Clark exercises legal or effective control, or is a present or former employee, officer, or agent.

6. Copies of all resolutions authorizing the use of an actuary.

7. All information and documentation pertaining to Clark's engagement of ACR Solutions Group. Specifically include:

| Information Due By_____ April 30, 2014 _____ | At Next Appointment | | Mail In | √ |
|---|---|---|---|---|

| **FROM** | **Name and Title of Requestor:**<br>Deborah O Reynolds, Internal Revenue Agent | **Date:**<br>**March 28, 2014** |
|---|---|---|
| | **Office Location:**<br>IRS – SAA Promoter Grp #1608, 151 Patton Ave., Ste 167, Asheville, NC 28801 | **Telephone Number:**<br>**828.225.8410**<br>(voice mail) |

| Catalog Number 23145K  www.irs.gov | 1 of 4 | Form **4564** |
|---|---|---|

| Form **4564** (Rev. September 2006) | Department of the Treasury – Internal Revenue Service **Information Document Request** | Request Number **#0002** |
| --- | --- | --- |

| **To:** (Name of Taxpayer and Company, Division or Branch) | **Subject:** IRC Sec 6700/6701 Investigation |
| --- | --- |
| **Celia R Clark, Esq.** 570 Lexington Avenue, New York, NY 10022 | **Submitted to:** Rachel L. Partain, Esq.; Celia R Clark, Esq. |
| | **Dates of Previous Requests:** |

    i.  All written advice ACR Solutions Group provided to Clark and Clark's clients,

    ii.  All competitive market analysis performed by ACR Solutions Group,

    iii.  All correspondence between Clark and ACR Solutions Group, along with any other documentation pertaining to ACR Solutions Group.

**B. Reinsurance Transactions / Interactions:**

For the time period beginning with the <u>first</u> formation, in whole or in part, of <u>any</u> captive insurance arrangement for anyone, and ending with the date of compliance with this request, please provide:

1. A complete copy of <u>each</u> engagement letter and/or contract/policy and/or other agreements/documents with <u>all</u> reinsurers, including all attachments, addendums, schedules, exhibits, revisions, stop-loss agreements and specifically including coverage schedules, limits, premiums and payment schedules or arrangements.

2. Copies of all reinsurance documents providing and/or supporting advice provided by reinsurer(s) to Clark and/or her clients and/or others designated in Clark captive arrangements.

3. Copies of all correspondence, paper and/or electronic, between the reinsurers or any subordinate or related party of the reinsurers with:

    i.  Clark, or any subordinate or related party of Clark

    ii.  All <u>clients</u> of Clark

    iii.  All <u>actuaries</u> used in Clark captive arrangements

    iv.  All captive managers/administrators and/or captive management or administrative companies

    v.  All others in any aspect of Clark captive arrangements

4. Complete disclosure of all Clark interests in reinsurers, to include but not limited to, name, date acquired, type of interest, how acquired, acquisition price, beneficial value, date of disposal and any others. "Clark interests" includes ownership interests or otherwise, direct and/or indirect interests, including any entity over which Clark exercises legal or effective control, or is a present or former employee, officer, or agent.

5. Complete copies of <u>each</u> claim file, whether settled, paid, cancelled/voided/not claimed, or in process.

6. Complete copies of <u>all</u> Clark client applications for participation in the reinsurer risk pools (and any Clark administered risk pool(s)).

| Information Due By   <u>April 30, 2014</u> | At Next Appointment | | Mail In | √ |
| --- | --- | --- | --- | --- |

| **FROM** | **Name and Title of Requestor:** Deborah O Reynolds, Internal Revenue Agent | **Date:** March 28, 2014 |
| --- | --- | --- |
| | **Office Location:** IRS – SAA Promoter Grp #1608, 151 Patton Ave., Ste 167, Asheville, NC 28801 | **Telephone Number:** 828.225.8410 (voice mail) |

| Catalog Number 23145K  www.irs.gov | 2 of 4 | Form **4564** |
| --- | --- | --- |

| Form **4564** (Rev. September 2006) | Department of the Treasury – Internal Revenue Service **Information Document Request** | Request Number **#0002** |
|---|---|---|
| **To:** (Name of Taxpayer and Company, Division or Branch) | **Subject:**   IRC Sec 6700/6701 Investigation | |
| | **Submitted to:** | |
| **Celia R Clark, Esq.** | Rachel L. Partain, Esq.; Celia R Clark, Esq. | |
| 570 Lexington Avenue, New York, NY 10022 | **Dates of Previous Requests:** | |

7. Complete copies of all documents pertaining to Clark underwriting policies and procedures. Specifically include:

  i. All binders,

  ii. All policies,

  iii. All correspondence, notes, drafts, reports, and other types of documents pertaining to the underwriting policies and procedures.

8. Identification of all Clark individuals with any underwriting responsibility.

9. Complete copies of all binders issued by reinsurers.

10. Complete copies of all policies issued by reinsurers.

11. Copies of all resolutions authorizing the use of reinsurer(s).

12. Complete copies of all trust arrangements/agreements dealing with reinsurance and/or any aspect of Clark captive insurance arrangements.

13. Copies of all monthly statements for all bank accounts associated with any reinsurance and/or trust arrangement.

14. All information and documentation pertaining to Clark's engagement of Pan-American Reinsurance Co. Specifically include:

  i. All copies of Pan-American Reinsurance Co.'s policies and binders,

  ii. All reinsurance agreements, including exhibits,

  iii. All amendments to reinsurance agreements, stop loss agreements, or any other agreement Clark has pertaining to Pan-American Reinsurance Co.,

  iv. All claims made to Pan-American Reinsurance Co. in Clark's possession,

  v. All correspondence between Pan-American Reinsurance Co. and Clark.

15. All information and documentation pertaining to Clark's or Clark's clients' engagement of Jade Reinsurance Group. Specifically include:

  i. All copies of Jade Reinsurance Group's policies and binders,

  ii. All reinsurance agreements, including exhibits,

  iii. All amendments to reinsurance agreements, stop loss agreements, or any other agreement Clark has pertaining to Jade Reinsurance Group,

| Information Due By_____ April 30, 2014 _____ | At Next Appointment | | Mail In | √ |
|---|---|---|---|---|

| **FROM** | **Name and Title of Requestor:** Deborah O Reynolds, Internal Revenue Agent | **Date:** March 28, 2014 |
|---|---|---|
| | **Office Location:** IRS – SAA Promoter Grp #1608, 151 Patton Ave., Ste 167, Asheville, NC 28801 | **Telephone Number:** 828.225.8410 (voice mail) |

| Catalog Number 23145K  www.irs.gov | 3of 4 | Form **4564** |
|---|---|---|

| Form **4564**<br>(Rev. September 2006) | Department of the Treasury – Internal Revenue Service<br>**Information Document Request** | Request Number<br><br>**#0002** |
|---|---|---|
| **To:** (Name of Taxpayer and Company, Division or Branch)<br><br>**Celia R Clark, Esq.**<br><br>570 Lexington Avenue,<br>New York, NY 10022 | **Subject:** IRC Sec 6700/6701 Investigation | |
| | **Submitted to:**<br><br>Rachel L. Partain, Esq.; Celia R Clark, Esq. | |
| | **Dates of Previous Requests:** | |

     iv.   All claims made to Jade Reinsurance Group in Clark's possession,

     v.   All correspondence between Jade Reinsurance Group and Clark.

     vi.   All agreements between Jade Reinsurance Group and Clark.

     vii.   All payments to Jade Reinsurance Group.

     viii.   All payments received from Jade Reinsurance Group.

**C. Other Agreements:**

For the time period beginning with the <u>first</u> formation, in whole or in part, of <u>any</u> captive insurance arrangement for anyone, and ending with the date of compliance with this request, please provide:

1. Complete copies of all agreements, including non-executed agreements, with Dale Edwards or any entity related to Dale Edwards.

2. Complete copies of all agreements, including non-executed agreements, with American Benefit Institute.

| Information Due By _____ April 30, 2014 _____ | At Next Appointment | | Mail In | √ |
|---|---|---|---|---|

| | **FROM** | **Name and Title of Requestor:**<br>Deborah O Reynolds, Internal Revenue Agent | **Date:**<br>**March 28, 2014** |
|---|---|---|---|
| | | **Office Location:**<br>IRS – SAA Promoter Grp #1608, 151 Patton Ave., Ste 167, Asheville, NC 28801 | **Telephone Number:**<br>**828.225.8410**<br>(voice mail) |

| Catalog Number 23145K  www.irs.gov | 4of 4 | Form **4564** |
|---|---|---|

**ATTACHMENT A**
**INSTRUCTIONS AND DEFINITIONS**

The following definitions and instructions apply to this Information Document Request ("IDR"):

1.  Please provide all hard copy documents and Electronically Stored Information (ESI) formatted for Concordance/Opticon. All documents originating from hard copy should be produced as TIFF or JPG named and branded with the Bates number. All ESI sourced documents (e.g. email, Microsoft Word, Excel, PowerPoint, etc.) should be provided as both Bates branded TIFF or JPG and in "native" format named according to Bates number. Provide emails or other documents with embedded attachments linked in a way that makes it clear that the documents are related. Documents should be de-duplicated and produced in color where necessary, with custodian, source and other information included as described in the attached addendum. Please remove any password protection or encryption from the individual files, or provide any passwords, encryption keys or certificates necessary to view the files.

    Concordance/Opticon *or universal format*:
    a.  Guidelines
        *   All files should be globally deduped to the extent possible with all custodians and sources tracked and provided as fields in the data file as described below.
        *   All files should be produced in a way that maintains the integrity of color that is important to the meaning of the document.
        *   All produced documents must be produced without document level passwords, encryption or viruses.
    b.  Data File - All available metadata and data fields in a Concordance delimited text file (.DAT) *or comma separated value file (.CSV)*.
        *   To the extent available, the following fields should be included:
            i.   BATESFIRST (for all docs)
            ii.  BATESLAST (for all docs)
            iii. ATTACHFIRST (for docs that are part of a family)
            iv.  ATTACHLAST (for docs that are part of a family)
            v.   EMAILTO (for email)
            vi.  EMAILFROM – (for email)
            vii. EMAILCC – (for email)
            viii. EMAILBCC – (for email)
            ix.  AUTHOR – (for attachments and loose docs)
            x.   DATESENT (for email)
            xi.  SUBJECT (for email)
            xii. ORIGINALFILENAME (for attachments and loose docs)
            xiii. FILEPATH (for attachments and loose docs)
            xiv. EMAILPATH (folder path of email within container)
            xv.  LASTMODDATE (for attachments and loose docs)

-2-

   xvi. CREATEDATE (for attachments and loose docs)
   xvii. MD5HASH
   xviii. CUSTODIAN
   xix. DUPECUSTODIAN (for all docs, a list of all custodians having possessed a copy)
   xx. SOURCE
   xxi. DUPESOURCE (for all docs, a list of all sources where a copy resided)
   xxii. NATIVEPATH (path to those files delivered in their native format)
   xxiii. Any other available and relevant field not in the above list.  This includes, but is not limited to, all bibliographic coding fields such as Author, Recipient, CC, BCC, DocDate, Folder Name, Binder Name, Box Name, POSTIT, Document Characteristics, etc.).

c. Image Reference File - Log file for Opticon image base (.OST) that lays out the document unitization *or a comma separated value file (.CSV) containing a list of the BATESFIRST and BATESLAST of each discrete document.*

d. Images – Bates-branded, CLASS IV, single page tiff files at 300 dpi, named according to Bates number should be delivered in a separate folder. JPG format may be used for pages that require production of color images. All image files should cross reference to both the OPT and DAT files.

e. Native Files - To the extent available, please provide native files, named according to BATESFIRST, in a separate folder and provide the path to the native file in the NATIVEPATH field of the data file.  At a minimum, all Excel, PowerPoint and database files must be produced in their native file format to the extent they were kept that way in the ordinary course of business.

f. TEXT - Doc Level Text files for all documents should be provided in a separate folder and should be the files' "extracted text" for documents from native format and "OCR" for docs that originated as images, hard copy, or documents that have been partially redacted.

2. The term "Clark" and "you" and "your" refers to Celia R. Clark, and any successor in interest and includes any and all subsidiaries, affiliates, or partners of Law Offices of Celia R. Clark, P.L.L.C., Clark & Gentry, P.L.L.C., and any entity over which Celia R. Clark exercises legal or effective control, and any present or former employees, officers, or agents of Law Offices of Celia R. Clark, P.L.L.C., or Clark & Gentry, P.L.L.C. or their subsidiaries, affiliates, or partners and any entity over which they exercise legal or effective control.

3. The requested items are those listed on Form 4564, Information Document Request.

Attachment A – Instructions and Definitions

- 3 -

4. The requested items are in the possession, custody, or control of Clark if any person or entity acting in any capacity for Clark has access upon inquiry or through a legal right to obtain.

5. If you contend that items responsive to the IDR are not within your possession, custody, or control, or are unavailable after inquiry, please:

    a. State what attempts you have made to locate and make available those documents, including the name and current address of each person of whom you made inquiry and the current and former position of such person;
    b. Provide a summary of the contents of the document you contend is not available, to the best of your ability;
    c. Provide a copy of each request or inquiry made, whether in written or electronic form;
    d. Provide a copy of each response to such inquiry or request; and
    e. State the name and current address of each person who has knowledge of the contents of the document.

6. If the requested items were once available, but are no longer in existence or in the possession, custody, or control of Clark, please provide:

    a. Your written policy and procedures for storing and retaining such materials and for destruction of such material;
    b. Documents showing that such materials are no longer in existence, the date destroyed, and the reasons for the destruction; and
    c. Complete information as to alternative sources of the requested information.

7. "ACR Solutions Group" means the actuary service provider ACR Solutions Group Incorporated, and any present or former employees, officers, or agents, including Allen Rosenbach.

8. "Actuary" means any person who opines on the financial impact of risk and uncertainty.

9. "Actuarial" means any opinion on the financial impact of risk and uncertainty.

10. "American Benefit Institute" means **American Benefits Institute**, and any present or former employees, officers, or agents.

11. "Copy" means an accurate and legible reproduction of all or any portion of the original of any document, or a copy of a copy.

12. "Captive insurance arrangement" means any transaction, in whole or in part, involving insurance companies established with the objective of insuring risks of

- 4 -

a related person, electing treatment under I.R.C. § 831(b), or electing treatment under I.R.C. § 953(d).

13. The terms "captive managers/administrators," "captive management," and "administrative companies" means any person providing advice, taking any action, collecting any money, or distributing information, related to management of a captive insurance arrangement.

14. "Dale Edwards" means Dale Edwards, and any entity over which Dale Edwards exercises legal or effective control, and any present or former employees, officers, or agents of any such entity.

15. The term "document" refers to any written, printed, typed, graphically, visually, or aurally reproduced material of any kind, or other means of preserving thought or expression, and all tangible things from which information can be processed or transcribed, including, but not limited to:

   a. Contracts, agreements, plans, term sheets, summaries, schedules, exhibits, ledgers, journals, supporting workpapers, opinions, studies, reports, presentations, commentaries, communications, correspondence, memoranda, electronic mail ("e-mail"), minutes, notes, comments, messages, telexes, telegrams, teletypes, cables, facsimiles, bulletins, announcements, press releases, brochures, notices of meetings, agendas, attendance lists, books, charts, graphs, surveys, manuals, and drafts, journal entries, alterations, or modifications of the foregoing;
   b. All e-mail, whether in an electronic or printed form, including but not limited to all e-mail on the user's system, all user and or administrator's back-up tapes and/or disks, and/or any other system or device that saves historical e-mails; and
   c. Video and/or audio tapes, cassettes, films, microfilm, computer files, computer disks, and any other information that is stored or processed by means of data processing equipment and which can be retrieved in electronic, printed, or graphic form.

16. The term "document" includes all amendments or supplements to, or restatements of, any document.

17. For any document with information on both sides of the document, please provide copies of both sides of the document or make available the original document.

18. If any attachment or attachments to any requested document exists, the request extends to encompass said attachments.

19. "Engagement letter" means any document that defines a legal relationship between a person providing services and a person receiving services.

-5 -

20. "Jade Reinsurance Group" means Jade Reinsurance Group, Inc., and any present or former employees, officers, or agents, including Christopher Jarvis and Dr. Lawrence L. Anderson.

21. "Pan-American Reinsurance Co." means the insurance company Pan-American Reinsurance Co., Ltd., and any present or former employees, officers, or agents.

22. "Person" means any natural person, proprietorship, partnership, corporation, association, organization, joint venture, firm or other business enterprise, governmental body or any subunit thereof, group of natural persons, or other entity.

23. "Reinsurance" means insurance that is purchased by an insurance company from one or more other insurance companies.

24. "Reinsurer" means an insurance company that purchases reinsurance.

25. "Reinsurer risk pools" means any transaction involving insurance companies that purchase reinsurance from each other in whole or in part.

26. "Related party" means any person connected to another person by blood relationship, marriage, common-law partnership or adoption, direct or indirect ownership, direct or indirect management, common ownership, or common management.

27. "Stop loss agreement" means any agreement or promise to limit an amount to a specific amount.

28. If you produce warehoused records as they are kept in the ordinary course of business, you must provide all means of indexing and retrieving such materials that access those records as they are kept in the ordinary course of business.

29. If you produce computerized records, you must provide the programs and the database for such and all means of accessing such records, including appropriate documentation. For computerized records produced that are created and saved with any of the following programs, you need not initially provide the programs or documentation for such: Adobe, Excel, Microsoft Access, Microsoft Word, or WordPerfect.

30. This IDR requires production of original, unaltered, and unredacted documents, unless otherwise specified. Please also provide non-identical copies of all items requested in this IDR. Please note and explain any deviation or difference between the original and the copy.

Attachment A – Instructions and Definitions

- 6 -

31. In the event that you withhold any document or portion of any document requested by this IDR, please provide a description of each such document or portion of the document being withheld, including but not limited to the number of pages contained in the document or portion of the document being withheld (and any associated attachment) and the specific reason why each document or portion of the document (and any associated attachment) is not being provided in response to the IDR.

32. If any document or portion of any document (and any associated attachment) is withheld on the grounds of privilege, please state with respect to each such document or portion of the document (and any associated attachment):

   a. The name and title of every person who created and/or prepared the document;
   b. The date of the document;
   c. The names and titles of the addressee(s) and all recipients of the documents and/or copies thereof;
   d. The subject matter of the document;
   e. A description of the document or portion of the document being withheld, including but not limited to, the number of pages it contains and whether it has any attachments;
   f. The privilege or protection claimed; and
   g. The engagement letter pursuant to which the document was created or prepared.

33. For documents being withheld on grounds of privilege, please produce copies of such documents reflecting all portions that are not privileged.

34. Wherever used in this request, words denoting the masculine, feminine, or neuter gender are to be construed as denoting another gender in all instances where they would so apply, and words denoting the singular or plural number are to be construed as denoting the other number in all instances where they would so apply.

| Form 4564 | Department of the Treasury<br>Internal Revenue Service<br>Information Document Request | Request Number<br>3 |
|---|---|---|
| **To: (Name of Taxpayer and Company, Division or Branch)**<br><br>Celia R. Clark, Esq.<br>570 Lexington Avenue, Suite 2401<br>New York, NY 10022 | **Subject:**<br>6694/6695/6700/6701/7402/7407/7408<br>Investigation | |
| | **Submitted to:**<br>  Celia R. Clark, Esq.,<br>  Rachel L. Partain, Esq. | |
| | Dates of Previous Requests: N/A | |

**FILE COPY**

**Description of Documents Requested:**

Please provide the items listed below. Refer to Attachment A, incorporated herein by reference, for instructions and definitions.

**Requested Information:**

The documentation being requested below is for Jade Reinsurance Group, Inc. ("Jade") and Emerald International Reinsurance, Inc. ("Emerald"), since inception to the date you respond to this Information Document Request (IDR). If information requested below was provided in a previous Information Document Response, please identify the bate stamp number to reference your response to the item requested below.

1.  All documents related directly or indirectly to the formation or dissolution of the captive insurance arrangements of Jade and Emerald, including emails, memorandum, agreements, by-laws, corporate resolutions

2.  Detailed general ledgers for Jade and Emerald since formation

3.  Minutes of all meetings

4.  All documents submitted to or received from governmental authorities, and all other documents, including emails, related to the process of applying for a license as an insurance company, reinsurance company, or captive insurance company

5.  All documents related directly or indirectly to the captive insurance arrangement and business of Jade and Emerald:

    o   agreements,

    o   insurance policies issued by the captives,

| Information Due By | 6/3/2016 | At Next Appointment | | Mail In | | X |
|---|---|---|---|---|---|---|

| | **Name and Title of Requestor:**<br>Julie Hersh, Revenue Agent, Badge # 831825<br>Steven Rowe, Group Manager, 937-610-2137 | **Date:**<br>4/27/2016 |
|---|---|---|
| **FROM** | **Office Location:**<br>2670 Industrial Highway, York, PA 17402<br>Phone 717-840-6017   Fax 888-850-6928 | **Page 1** |

Form 4564

| Form 4564 | Department of the Treasury<br>Internal Revenue Service<br>Information Document Request | Request Number<br>3 |
|---|---|---|
| To: (Name of Taxpayer and Company, Division or Branch)<br><br>Celia R. Clark, Esq.<br>570 Lexington Avenue, Suite 2401<br>New York, NY 10022 | Subject:<br>6694/6695/6700/6701/7402/7407/7408<br>Investigation | |
| | Submitted to:<br>Celia R. Clark, Esq.,<br>Rachel L. Partain, Esq. | |
| | Dates of Previous Requests: N/A | |

**Description of Documents Requested:**

- o invoices from the Captive Insurance Companies - Reinsurer to the operating companies involved in the captive arrangements and invoices from Jade and Emerald for the re-insurance agreements with the Captive Insurance Companies

- o applications,

- o emails between clients, potential clients, actuaries, any clients' financial advisors and Clark or anyone else involved with the captive arrangement

- o actuarial analysis provided for each captive insurance arrangement, all documents supporting work files and any commercial insurance policies the actuary relied on and anything else the actuary relied upon to produce the reports produced for the Captive Insurance Companies,

- o all documents reviewed or relied upon in the underwriting and/or pricing of reinsurance agreements,

- o documentation of premiums or other compensation paid or received by Jade and Emerald,

- o all documents reflecting information as to the person(s) whose risks were reinsured, including the name of the insureds (and any key for the reinsurance agreement numbers)

6. All documents including general ledgers relating to the amount of reserves necessary to maintain the reinsurance agreements between Jade and Emerald and the participating policies

7. All claim documentation for Jade and Emerald, including claims submitted, approved, denied, payment of claims, reimbursement from participants in pools and analysis of the losses and expenses allocated to the trust funds of the participating captives for each indemnity period including each amount payable to each participating captive during the indemnity periods

| Information Due By | 6/3/2016 | At Next Appointment | | Mail In | X |
|---|---|---|---|---|---|

| FROM | Name and Title of Requestor:<br>Julie Hersh, Revenue Agent, Badge # 831825<br>Steven Rowe, Group Manager, 937-610-2137 | Date:<br>4/27/2016 |
|---|---|---|
| | Office Location:<br>2670 Industrial Highway, York, PA 17402<br>Phone 717-840-6017   Fax 888-850-6928 | Page 2 |

Form 4564

| Form 4564 | Department of the Treasury<br>Internal Revenue Service<br>Information Document Request | Request Number<br>3 |
|---|---|---|
| **To: (Name of Taxpayer and Company, Division or Branch)**<br><br>Celia R. Clark, Esq.<br>570 Lexington Avenue, Suite 2401<br>New York, NY 10022 | **Subject:**<br>6694/6695/6700/6701/7402/7407/7408<br>Investigation | |
| | **Submitted to:**<br>Celia R. Clark, Esq.,<br>Rachel L. Partain, Esq. | |
| | **Dates of Previous Requests: N/A** | |

**Description of Documents Requested:**

8. All bank accounts reflecting Jade and Emerald transactions including but not limited to trust account bank statements and escrow account statements including wire transfers and instructions for the captive insurance arrangements of Jade and Emerald since inception

9. Please explain if there are any captive insurance arrangements still involved in the Jade arrangement. Provide a narrative explaining why Jade may have been dissolved and provide an explanation why Emerald was formed.

10. Please provide a narrative detailing out how the captive insurance arrangement of Jade is structurally and technically different in operation from Emerald.

11. Documentation to identify those Subscribers that chose to reject any participants in the pool structure for Jade and Emerald according to the Subscription Agreement and Retrocession Agreements for the captive arrangements.


<u>Please keep in mind that additional information may be requested at a later date.</u>

| Information Due By | <u>6/3/2016</u> | At Next Appointment | | Mail In | | X |
|---|---|---|---|---|---|---|

| | **Name and Title of Requestor:**<br>**Julie Hersh, Revenue Agent, Badge # 831825**<br>**Steven Rowe, Group Manager, 937-610-2137** | **Date:**<br>4/27/2016 |
|---|---|---|
| **FROM** | **Office Location:**<br>2670 Industrial Highway, York, PA 17402<br>Phone 717-840-6017   Fax 888-850-6928 | **Page 3** |

Form 4564

**Attachment A**
**Instructions and Definitions**

The following definitions apply to this Information Document Request ("IDR"):

1. The term "Clark" and "you" and "your" refers to Celia R. Clark, and any successor in interest and includes any and all subsidiaries, affiliates, or partners of Law Offices of Celia R. Clark, P.L.L.C, Clark & Gentry, P.L.L.C, and any entity over which Celia R. Clark exercises legal or effective control, and any present or former employees, officers, or agents of Law Offices of Celia R. Clark, P.L.L.C., or Clark & Gentry, P.L.L.C. or their subsidiaries, affiliates, or partners or any entity over which they exercise legal or effective control.

2. The requested items are those listed on Form 4564, Information Document Request.

3. The requested items are in possession, custody, or control of Clark if any person or entity acting in any capacity for Clark has access upon inquiry or through a legal right to obtain.

4. If you contend that items responsive to the IDR are not within your possession, custody, or control, or are unavailable after inquiry, please:

    a. State what attempts you have made to locate and make available those documents, including the name and current address of each person of whom you made inquiry and the current and former position of such person;

    b. Provide a summary of the contents of the document you contend is not available, to the best of your ability;

    c. Provide a copy of each request or inquiry made, whether in written or electronic form;

    d. Provide a copy of each response to such inquiry or request; and

    e. State the name and current address of each person who has knowledge of the contents of the document.

5. If the requested items were once available, but are no longer in existence or in the possession, custody, or control of Clark, please provide:

    a. Your written policy and procedure for storing and retaining such materials and for destruction of such materials;

    b. Documents showing that such materials are no longer in existence, the date destroyed, and the reasons for the destruction; and

    c. Complete information as to alternative sources of the requested information.

6. "ACR Solutions Group" means the actuary service provider ACR Solutions Group Incorporated, and any present or former employees, officers, or agents including Allen Rosenbach.

7. "Actuary" means any person who opines on the financial impact of risk and uncertainty.

8. "Actuarial" means any opinion on the financial impact of risk and uncertainty.

9. "Copy" means an accurate and legible reproduction of all or any portion of the original of any document, or a copy of a copy.

10. "Captive insurance arrangement" means any transaction, in whole or in part, involving the insurance companies established with the objective of insuring risks of a related person, electing treatment under I.R.C. § 831(b), or electing treatment under I.R.C. § 953(d).

11. The terms "captive managers/administrators," "captive management," and "administrative companies" means any person providing advice, taking any action, collecting any money, or distributing information, related to management of a captive insurance arrangement.

12. The term "document" refers to any written, printed, typed, graphically, visually, or aurally reproduced material of any kind, or other means of preserving thought or expression, and all tangible things from which information can be processed or transcribed, including, but not limited to:

    a. Contracts, agreements, plans, term sheets, summaries, schedules, exhibits, ledgers, journals, supporting work papers, opinions, studies, reports, presentations, commentaries, communications, correspondence, memoranda, electronic mail ("e-mail"), minutes, notes, comments, messages, telexes, telegrams, teletypes, cables, facsimiles, bulletins, announcements, press releases, brochures, notices of meetings, agendas, attendance lists, books, charts, graphs, surveys, manuals, and drafts, journal entries, alterations, or modifications of the foregoing;

    b. All e-mail, whether in an electronic or printed form, including but not limited to all e-mail on the user's system, all user and or administrator's back-up tapes and/or disks, and/or any other system or device that saves historical e-mails; and

    c. Video and/or audio tapes, cassettes, films, microfilm, computer files, computer disks, and any other information that is stored or processed by means of data processing equipment and which can be retrieved in electronic, printed, or graphic form.

13. The term "document" includes all amendments or supplements to, or restatements of any document.

14. For any document with information on both sides of the document, please provide copies of both sides of the document or make available the original document.

15. If any attachment or attachments to any requested document exists, the request extends to encompass said attachments.

16. "Engagement letter" means any document that defines a legal relationship between a person providing services and a person receiving services.

17. "Jade" means Jade Reinsurance Group, Inc. and any present or former employees, officers or agents, including Christopher Jarvis and Dr. Lawrence L. Anderson.

18. "Emerald" means Emerald International Reinsurance, Inc. and any present or former employees, officers, or agents, including Robin Trevors, Jason Lawhorn and Dennis Hayes.

19. "Person" means any natural person, proprietorship, partnership, corporation, association, organization, joint venture, firm or other business enterprise, governmental body or any subunit thereof, group of natural persons, or other entity.

20. "Reinsurance" means insurance that is purchased by an insurance company from one or more other insurance companies.

21. "Reinsurer" means an insurance company that purchases reinsurance.

22. "Reinsurer risk pools" means any transaction involving insurance companies that purchase reinsurance from each other in whole or in part.

23. "Related party" means any person connected to another person by blood relationship, marriage, common-law partnership or adoption, direct or indirect ownership, direct or indirect management, common ownership, or common management.

24. "Stop loss agreement" means any agreement or promise to limit an amount to a specific amount.

25. If you produce warehoused records as they are kept in the ordinary course of business, you must provide all means of indexing and retrieving such materials that access those records as they are kept in the ordinary course of business.

26. If you purchase computerized records, you must provide the programs and the database for such and all means of accessing such records, including appropriate documentation. For computerized records produced that are created and saved with any of the following programs, you need not initially provide the programs or documentation for such: Adobe, Excel, Microsoft Access, Microsoft Word, or WordPerfect.

27. This IDR requires production of original, unaltered, and un-redacted documents, unless otherwise specified.  Please also provide non-identical copies of all items requested in the IDR.  Please note and explain any deviation or difference between the original and the copy.

28. In the event that you withhold any document or portion of any document requested by this IDR, please provide a description of each such document or portion of the document being withheld, including but not limited to the number of pages contained in the document or portion of the document being withheld (and any associated attachment) and the specific reason why each document or portion of the document (and any associated attachment) is not being provided in response to the IDR.

29. If any document or portion of any document (and any associated attachment) is withheld on the grounds of privilege, please state with respect to each such document or portion of the document (and any associated attachment):
    a. The name and title of every person who created and/or prepared the document;
    b. The date of the document;

    c.  The names and titles of the addressee(s) and all recipients of the documents and/or copies thereof;

    d.  The subject matter of the document;

    e.  A description of the document or portion of the document being withheld, including but not limited to, the number of pages it contains and whether it has any attachments;

    f.  The privilege or protection claimed; and

    g.  The engagement letter pursuant to which the document was created or prepared.

30. For documents being withheld on grounds of privilege, please produce copies of such documents reflecting all portions that are not privileged.

31. Wherever used in this request, words denoting the masculine, feminine, or neuter gender are to be construed as denoting another gender in all instances where they would so apply, and words denoting the singular or plural number are to be construed as denoting the other number in all instances where they would so apply.

**Addendum to Information Document Request**

electronic files should be produced in Concordance, Opticon, or universal format. The following guidelines .ould be followed in producing all electronic documents.

1. Guidelines
    - All files should be globally de-duplicated to the extent possible with all custodians and sources tracked and provided as fields in the data file as described below.
    - All files should be produced in a way that maintains the integrity of color that is important to the meaning of the document.
    - All produced documents must be produced without document level passwords, encryption or viruses.
2. Data File - All available metadata and data fields in a Concordance delimited text file (.DAT) *or comma separated value file (.CSV)*.
    - To the extent available, the following fields should be included:
        i. BATESFIRST (for all docs)
        ii. BATESLAST (for all docs)
        iii. ATTACHFIRST (for docs that are part of a family)
        iv. ATTACHLAST (for docs that are part of a family)
        v. EMAILTO (for email)
        vi. EMAILFROM – (for email)
        vii. EMAILCC – (for email)
        viii. EMAILBCC – (for email)
        ix. AUTHOR – (for attachments and loose docs)
        x. DATESENT (for email)
        xi. SUBJECT (for email)
        xii. ORIGINALFILENAME (for attachments and loose docs)
        xiii. FILEPATH (for attachments and loose docs)
        xiv. EMAILPATH (folder path of email within container)
        xv. LASTMODDATE (for attachments and loose docs)
        xvi. CREATEDATE (for attachments and loose docs)
        xvii. MD5HASH
        xviii. CUSTODIAN
        xix. DUPECUSTODIAN (for all docs, a list of all custodians having possessed a copy)
        xx. SOURCE
        xxi. DUPESOURCE (for all docs, a list of all sources where a copy resided)
        xxii. NATIVEPATH (path to those files delivered in their native format)
        xxiii. Any other available and relevant field not in the above list. This includes, but is not limited to, all bibliographic coding fields such as Author, Recipient, CC, BCC, DocDate, Folder Name, Binder Name, Box Name, POSTIT, Document Characteristics, etc.).
3. Image Reference File - Log file for Opticon image base (.OST) that lays out the document unitization *or a comma separated value file (.CSV) containing a list of the BATESFIRST and BATESLAST of each discrete document.*
4. Images – Bates-branded, CLASS IV, single page tiff files at 300 dpi, named according to Bates number should be delivered in a separate folder. JPG format may be used for pages that require production of color images. All image files should cross reference to both the OPT and DAT files.
5. Native Files - To the extent available, please provide native files, named according to BATESFIRST, in a separate folder and provide the path to the native file in the NATIVEPATH field of the data file. At a minimum, all Excel, PowerPoint and database files must be produced in their native file format to the extent they were kept that way in the ordinary course of business.
6. TEXT – Doc Level Text files for all documents should be provided in a separate folder and should be the files' "extracted text" for documents from native format and "OCR" for docs that originated as images, hard copy, or documents that have been partially redacted.