**From:** James Wilson <​@gmail.com>
**Sent:** Sunday, December 13, 2009 3:00 PM
**To:** Celia Clark
**Subject:** RE: more explanation about the transfer

Thanks for your valuable input, Celia. These items can wait until the new year.
I have sent you more pears this year to help make your holiday season have a little cheeriness in addition to all the work.
If they are not quite ripe, just leave them out at room temperature and they will ripen in a few days.
All the best to you this season the coming year. You have been a blessing in my life. Thank you.

**From:** Celia Clark [mailto:CClark@cclarklaw.com]
**Sent:** Sunday, December 13, 2009 2:01 PM
**To:** James Wilson
**Subject:** RE: more explanation about the transfer

Dr. Wilson: I am glad you filled me in on your plans. This is an area in which careful planning will be very important.

For example, your second option, ie., the irrev. trusts forming CIC2 and purchasing Rifa Jace stock, would be a disaster because both CICs would then have the same owner and would be combined into a single entity for purposes of applying the 831(b) limits. In order to avoid that result, CIC1 and CIC2 must not have more than 50% overlapping owners.

It is possible that one irrev. trust could own one CIC. Do they have the same beneficiaries? Another option is to have a separate irrev. trust for each child. Two trusts would share ownership of each CIC, 50/50. You and your wife would not be beneficiaries but could control investments of the CICs, and be managing members of subsidiary LLCs of the CICs. In that way, you would have access to CIC funds, indirectly, while the CICs themselves would not be part of your taxable estates.

This is my crunch season, through the end of the year. If you could wait until January we could set up a conference call with your estate planning attorney to discuss the options.

Celia

**From:** James Wilson [mailto:@gmail.com]
**Sent:** Thursday, December 10, 2009 11:00 AM
**To:** Celia Clark
**Subject:** more explanation about the transfer

Hi Celia,
I was in a tremendous hurry to finish you email before having to leave for Las Vegas where I am speaking this week-end. On the plane it occurred to me that there are things I left out so your information is incomplete. The following should help.

The purpose of this entire move was to take as many of our assets as possible and move them outside our estate, so our heirs would not be saddled with estate taxes and other burdens upon our death.

Dylaluha Dynasty Trust is a revocable Nevada trust with Vivien and I as the grantors and trustees and our Children as the beneficiaries. It has been in existence for about 5 years. The 2 new trusts, Calumet and Something More, are irrevocable perpetual Arizona trusts set up by someone else with Vivien and I as trustees and beneficiaries with our progeny

DEFENDANT'S EXHIBIT 11 WILSON 8/31/22

1

PET040622

SOF025134

Docket Nos. 26547-13, et al
Exhibit No. 343-J

WILSON-324999

becoming beneficiaries upon our deaths. The reason 2 the trusts are set up this way is because the estate planning attorney we are using thought it is the best way to allow us access to our assets, yet pass them on to our children later.

On December 31, there is an agreement to go into effect that sells the assets of Mingo, minus Rifa Jace, to the two irrevocable trusts. Beginning January the irrevocable trusts will begin making payments to Dylaluha for the purchase of the 98% of Mingo's assets held by Dylaluha Dynasty Trust. These payments are for three years after which the transfer of assets will be complete.

The "post- transfer" chart you have is actually an intermediary chart because the appraisal for the captive has not been done. The present plan is to make a separate purchase of the captive by the 2 irrevocable trusts and use the income and insurance premiums from Rifa Jace to pay out the revocable trust over time. Another thought was to establish a second captive owned by the2 irrevocable trusts and use its premiums and income to purchase Rifa Jace move it underneath the trusts. We are considering this because both Future Formulations and Immunogenics Company of America are expected to grow substantially over the next few years and we will need a second insurance company to help defray income from their added revenues because their combined profits should exceed the limits of the current maximum allowed for insurance premiums.

As I sit back and take a breath from this, I am not certain what the next move should be.

It all goes back to the same question. How can we enjoy at least some of our assets, not have them as a part of our estate and not create a burden to our children upon our passing. As a note of clarification, I have no doubts about the integrity of any of our 4 children. None of them would try to cut us out of anything, move against each other or act in selfish ways to control the assets. At the same time, they are also not very sophisticated in handling larger sums of money and assets, so I want to stay in control of handling the assets.

I welcome any ideas or suggestions, you have. You are very experienced and have probably dealt with issues like this many times, so I am very open to your suggestions and should have asked for them before. If nothing more I would appreciate your input on:

What is the best way to hold insurance companies? What would you suggest we do to accomplish my goal?
Thanks Celia. I look forward to hearing your comments and suggestions.

PET040623

SOF025135

Docket Nos. 26547-13, et al
Exhibit No. 343-J

WILSON-325000