



ACTUARIAL &
TECHNICAL
SOLUTIONS, INC.

STEVEN P. LATTANZIO, FCAS, MAAA
CONSULTING ACTUARY

August 31, 2011

VIA EMAIL

Law offices of
Celia R. Clark, p.l.l.c.
570 Lexington Avenue, 17th Floor
New York, New York 10022

Re: Blue Herron Insurance Company, Ltd.

Dear Celia:

As requested, Actuarial & Technical Solutions, Inc. (Actuarial Solutions) has performed a limited review of the premium determination for Blue Herron Insurance Company, Ltd. ("Blue Herron" or the "Captive"). Blue Herron is an 831(b) captive domiciled in St. Kitts and provides coverage for various business risks for Cellular Sales of Knoxville, Inc., a Tennessee U.S. corporation formed in 1993.

The Captive's policies for the eight coverages listed below, became effective on December 30, 2010:

1. administrative actions
2. business income protection
3. business risk indemnity
4. computer operations and data
5. employee fidelity
6. employment practices liability
7. litigation expense
8. tax indemnity

Total premium over all eight coverages is $836,000. This amount was determined by Allen Rosenbach of ACR Solutions Group.

Our review focused on three of the eight coverages currently written by the Captive: business income protection, business risk indemnity and tax indemnity. These coverages were chosen after consideration of the amount of premium associated with each coverage as well as a preliminary phone conversation with Mr. Rosenbach which focused on his general approach to determining premium for each coverage.

3555 Veterans Memorial Highway, Suite A
Ronkonkoma, NY 11779

Telephone (631) 471-8655
Fax (631) 471-9404
slattanzio@actuarialsolutions.com

ACR_IRS0304089

The scope of our review consisted of the following tasks:

1. Determine the reasonableness of the approach(es) utilized by Mr. Rosenbach in the determination of premiums for the Captive. Please note that we did not undertake an independent analysis in order to determine the appropriateness of the resulting premiums being charged as such an analysis is beyond the scope of the work we were requested to perform.
2. Comment on the adequacy of the documentation of the approach(es) utilized by Mr. Rosenbach.

As part of our review, we were provided with a number of documents, some of which were sent by you and some of which were sent by Mr. Rosenbach. Among the items reviewed were:

- pages for each coverage which included exposure figures, rates, and rating factors used to derive the premiums for the December 30, 2009 to December 29, 2010 and December 30, 2010 to December 29, 2011 periods,
- the business plan of the Captive, and
- documents which were forwarded in support of Mr. Rosenbach's selection of certain factors utilized in the determination of final premium.

We began our review with a discussion with Mr. Rosenbach to obtain an overview of his approach to determining premium. This was followed shortly thereafter with three detailed requests for information relating to the three coverages we selected for review. More specifically, we requested that he provide documentation and supporting data used to determine the final premium for the Captive. These requests began as somewhat limited in scope and expanded into requests for greater detail to the extent that we felt Mr. Rosenbach's responses needed further clarification.

After reviewing the materials provided, we found that, overall, the documentation provided was not sufficient for us to arrive at a conclusion regarding the reasonability of the premiums determined by Mr. Rosenbach. While there were instances where we found the overall philosophy being implemented to be reasonable, there were areas where the execution of those philosophies may not have been consistent with how we would have approached such a situation.

Determination of premium, like many actuarial exercises, requires the use of judgment. This judgment is often based upon years of experience coupled with analysis of available data. In instances where historical data is unavailable, an actuary will often seek to utilize information from a number of possible sources, including information from filings made by large commercial carriers as well as industry information (both insurance and non-insurance in nature). With respect to determining premium for Blue Herron, Mr. Rosenbach appears to have utilized a mix of both. Given the lack of loss experience data for the Captive, it is certainly reasonable to rely upon external data when determining rates. However, one must be sure documentation is sufficient so that, at a minimum, another actuary within the same discipline has the ability to follow the process used.

While there were aspects of Mr. Rosenbach's general approach which we found to be acceptable, there are certain items that we would have approached in a different manner. Set forth below is a discussion of areas where our approach would have differed from that taken by Mr. Rosenbach.

- In order to determine the premium for business income protection and business risk indemnity, information regarding base rates and rating factors was taken from rate filings made by Chubb, a large commercial insurance carrier. Although we do not take exception to this general approach, we note that Chubb filings which date back to 2005 were used to determine the premium for a policy with a 12/30/10 effective date. We would have considered more recent filings as we typically prefer to use the most recent data available. If more recent data is not available, we would consider making adjustments to the rates being relied upon so that the rates are appropriate for the period during which the coverage is being provided (e.g. application of loss trend). Based upon the support provided, it does not appear that the rates from the Chubb filing were adjusted to reflect potential differences in expected loss for 2005 vs 2011. Also, it was not clear to us whether there were or were not other filings available which were more current.

- The supporting documentation provided included two Chubb filings—one which was effective 1/2005 and a subsequent one which was effective 6/2005. With respect to business income protection, increased limits factors (ILFs) were taken from the earlier filing while other rating factors (e.g. deductible factors) were taken from the latter filing. Once a filing had been selected, we would have taken all applicable rating factors from the selected filing. The use of a single filing is important to maintain consistency (i.e., the data being used by the insurance carrier to produce the filing will be the same within the same filing, but not necessarily from one filing to the next).

- With respect to business risk indemnity coverage, the premium was calculated using base rates and rating values from the older of the two Chubb filings (1/2005) provided. There is a significant difference between the premiums indicated by the base rates in these filings; the premium indicated by the base rates from the 6/2005 filing is roughly 50% of the premium indicated by the base rates from the 1/2005 filing. As mentioned above, we prefer to use the most recent information available, unless we have reason to believe use of such information is inappropriate. Additionally, it appears somewhat unusual that the 6/2005 filing was relied upon for the determination of the business income protection premium whereas the 1/2005 filing was relied upon for the determination of the business risk indemnity premium.

- As a starting point for the business risk indemnity premium, base rates for Hazard Group 1 from the 1/2005 Chubb filing were applied. While the base rates for Hazard Group 1 were utilized, deductible factors for Hazard Groups 3 and 4 were used. Once the appropriate Hazard Group for the insured was determined, we would have used both the applicable base rates and deductible factors for the selected Hazard Group.

- In calculating the premium for business income protection, Mr. Rosenbach began by selecting base rates for each of the three components (competition, regulatory/legislative actions, and reputation). Mr. Rosenbach informed us that these base rates were selected judgmentally based upon his experience and consideration of rates for similar coverages and risks. We do not have sufficient experience to be able to judgmentally determine a base rate for business income protection coverage, nor do we know of a third party that has such experience. Given that we were not provided with any further support for the selected base rates and we do not possess any relevant data with respect to these components, we cannot comment on the appropriateness of the selected base rates. It is interesting to note that once selected, the base rates, for each component of coverage, were significantly modified via schedule rating. This

ACR_IRS0304091

indicates that the base rates were not selected for this particular insured; if the base rates were selected to reflect the unique exposure of the insured, we would have expected to see little, if any, adjustment via schedule rating.

- Mr. Rosenbach informed us that, generally, the rates for the Captive reflect the same expense load from the filings of the commercial writer. If we were deriving rates based upon a rate filing of another insurer, we would prefer to remove the expense load for the insurer from the rates in order to derive the expected loss. We would then reflect the unique expenses of the Captive in order to determine the rate, since the expenses of the commercial writer may vary materially from those of the Captive. In our experience, we have found that specific expense information is typically readily available with respect to individual captives as many of the operating expenses are contractual in nature.

As mentioned above, based on the information provided, we were unable to draw a conclusion regarding the reasonableness of the premiums calculated by Mr. Rosenbach for Blue Herron. We cannot say that the premium being charged is inappropriate; our comments address the approaches taken and judgments rendered.

If you have any questions or would like to discuss further, please feel free to contact us.

Very truly yours,

*[signature]*

Steven P. Lattanzio, FCAS, MAAA, FCA
Consulting Actuary

*[signature]*

Andrew Vega, FCAS, MAAA, FCA
Actuarial Analyst

*[signature]*

David K. Raikowski, ACAS
Actuarial Consultant

ACR_IRS0304092